No. 88-539

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

EMMA JEAN "E.J." HANDO,

       Plaintiff and Appellant,

  -vs-

PPG INDUSTRIES, INC., SPRING CREEK COAL
COMPANY, and NERCO, INC., jointly and
severally,

       Defendants, Respondents and
       Cross-Appellants.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
              In and for the County of Yellowstone,
              The Honorable Russell Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Nye & Meyer; Jerrold L. Nye, Billings, Montana

    For Respondents: (cross-appellants)

        Moulton Law Firm; W. Anderson Forsythe, Billings,
        Montana
        Anderson, Brown, Law Firm; Steven H. Harman, Billings,
        Montana
        Pamela L. Jacklin; Stoel, Rives, Boley, Jones & Grey,
        Portland, Oregon

---

Submitted on Briefs: Feb. 3, 1989

Decided: March 30, 1989

Filed:

_____
              Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Emma Jean Hando appeals the grant of summary judgment to NERCO, Inc. (NERCO) by the the Thirteenth Judicial District Court, Yellowstone County. The court granted summary judgment after holding that NERCO, as the parent/grandparent corporation of Spring Creek Coal Company (SCCC), had no duty to provide a safe work place for Hando and the other SCCC employees.

The court also held that the statute of limitations applicable to this action was tolled until a medical diagnosis confirmed the causal connection between appellant's recurrent ailments and her exposure to the paint used by SCCC. The court therefore denied the motions for summary judgment by PPG Industries, Inc. (PPG) and NERCO and held that the three-year statute of limitations had not run before Hando filed her complaint in this action. NERCO and PPG each filed a cross-appeal from this denial of their motions for summary judgment.

We affirm the District Court's grant of the first motion and denial of the second.

Appellant presented the following issues upon appeal:

1. Did NERCO, as the parent or grandparent corporation of the wholly-owned SCCC subsidiary, breach its duty to provide a safe work place?

2. Does workers' compensation insurance obtained by the wholly-owned SCCC subsidiary extend to and protect NERCO, the parent or grandparent corporation, from claims arising from a work-related injury?

NERCO and PPG raised the following issue upon cross-appeal:

1. Are appellant's claims barred by the running of the statute of limitations?

The parties generally agree to the truth of the following facts for purposes of a discussion of the issues decided by the District Court's summary judgments. Emma Jean Hando (Hando) was employed by SCCC from March 3, 1980 until May of 1984. SCCC, a Montana corporation, was a wholly-owned subsidiary of NERCO, an Oregon Corporation, during this period. SCCC was formed for the purpose of owning and operating a strip coal mine in southwestern Montana. NERCO generally engaged in the business of developing, mining and selling coal through its ownership of various subsidiary corporations, such as SCCC, which controlled and supervised daily mining operations in the individual coal mines.

In 1981, Hando was assigned the duty of painting various surfaces within the coal processing plant at the Spring Creek Mine (Mine). She believed that the paint used, which was manufactured by PPG, caused her and others to suffer some adverse physical reactions. Hando was exposed to this paint again in April of 1982 when her supervisor at SCCC assigned her the job of painting within the control room at the Mine. The area in which she painted was poorly ventilated, and she briefly lost consciousness while painting. Recognizing that she had suffered an adverse reaction to the paint fumes, an SCCC supervisor contacted the poison control center in Denver, Colorado and arranged for her to have a medical examination in her hometown of Sheridan, Wyoming.

Between 1982 and 1984, Hando saw numerous physicians to determine the cause of numerous emotional, mental and physical problems (including nauseousness, dizziness, diarrhea, fatigue, depression, and recurrent infections). She believed her exposure to the paint caused these problems.

Moreover, Hando and SCCC signed a workers' compensation claim in May of 1982 which stated her problems arose after she was "poisoned" by exposure to "paint vapors." Physicians at the Mayo Clinic also tested and evaluated her in late 1983 pursuant to arrangements made by SCCC after Hando complained to her employer in February of 1983 that she was unable to work around various chemicals. All these physicians who examined her prior to 1984 denied any causal connection between her continuing ailments and her paint exposure.

Following an examination of Hando in early 1984, Dr. Anderson of Billings, Montana stated his belief that her problems may have been caused by her toxic exposure to paint at the Mine. Dr. Anderson referred her to Dr. Randolph in Chicago, Illinois for further tests. Tests conducted in Chicago confirmed that her ailments were due to her sensitivity to petrochemicals and that her exposure to the PPG paint while employed by SCCC most likely triggered this sensitivity. Hando informed SCCC that she was unable to work, even at a receptionist position with the company, due to her chemical hypersensitivity. Consequently, her employment with SCCC ended on May 30, 1984.

On October 25, 1985, Hando filed a complaint against PPG, NERCO and SCCC. She amended this complaint on May 21, 1986 to include a products liability claim against PPG (Count I) and a claim for failure to provide a safe work place against NERCO (Count II). The additional claims against SCCC have since been settled and no issue remains to be tried against SCCC.

NERCO filed its motion for summary judgment on March 21, 1988, contending that it owed no duty as a matter of law to provide SCCC employees with a safe work place. After hearing the motion on May 18, 1988, the District Court

4

granted summary judgment holding that NERCO owed no duty to provide Hando with a safe work place.

PPG also filed a motion for summary judgment, contending that Hando's claim was barred because the three-year statute of limitations applicable to this action had run prior to the filing of her complaint. On May 12, 1988, PPG asked the court to reconsider its denial of this motion in light of recent case law. NERCO filed a supplemental motion for summary judgment, thereby joining with PPG to argue the statute of limitations had run. The District Court denied these motions for summary judgment holding that the statute of limitations had been tolled until April of 1984 when a physician diagnosed the causal connection between Hando's ailments and her exposure to the PPG paint. Consequently, the three-year statute of limitations had not expired when Hando filed her complaint in October of 1985.

On October 24, 1988, the District Court entered its final amended judgment, pursuant to Rule 54(b), M.R.Civ.P., on those issues decided by its summary judgment rulings. Hando appealed from the court's grant of summary judgment on the issue of the lack of duty to provide a safe work place owed by NERCO. PPG and NERCO filed a cross-appeal from the court's denial of their motions for summary judgment on the issue of the running of the statute of limitations.

The first issue presented for review involves the duty owed by NERCO to provide a safe work place for SCCC employees. Appellant Hando contends that material issues of fact exist about whether NERCO was directly involved in the activities of its wholly-owned SCCC subsidiary and therefore liable, under either an agency or alter ego theory, for employment injuries suffered by SCCC employees due to an unsafe work place. Consequently, Hando argues the District

5

Court erred in granting NERCO's motion for summary judgment on the issue of a duty owed by NERCO.

The general rule is that summary judgment is proper only if no genuine issue exists as to any material fact and if the moving party is entitled at law to a judgment. Rule 56(c), M.R.Civ.P. Once the moving party has shown that no material issue of fact exists and that she is entitled to judgment as a matter of law, the burden shifts. The opposing party then must come forward with substantial evidence sufficient to raise a factual issue, or the court may grant summary judgment on the matter before the court. D'Agostino v. Schaap (Mont. 1988), 748 P.2d 466, 468, 45 St.Rep. 14, 16. NERCO, as the moving party in the present case, had the burden of showing that no factual issues existed which were material to a determination of whether it had a duty to provide a safe work place to SCCC employees. NERCO also had the burden of proving that it was entitled to summary judgment as a matter of law because the SCCC subsidiary was not its agent or alter ego, and that NERCO was therefore a separate corporation entity with no legal duty to provide a safe work place to employees of SCCC. We hold that NERCO met both these burdens.

Employees have a statutory duty to provide a safe work place for employees. See § 50-71-201, -202, MCA. This Court previously has held that this duty generally is owed only by the immediate corporation employer. See, e.g., Shannon v. Howard S. Wright Constr. Co. (1979), 181 Mont. 269, 593 P.2d 438. This limitation upon the duty serves to foster the growth of corporations by protecting the corporate owners, whether shareholders or a parent corporation, from liability for those "obligations incurred in the management of the business of the corporation." See Barnes v. Smith (1913), 48 Mont. 309, 316, 137 P. 541, 543.

6

On occasion, however, courts may extend the obligations and resulting liabilities of a subsidiary corporation to a parent or grandparent corporation. This extension of liability is achieved by disregarding the separate corporate entity and treating the subsidiary and parent as one corporation, a process otherwise known as "piercing the corporate veil." See, e.g., Flemmer v. Ming (Mont. 1980), 621 P.2d 1038, 1042, 37 St.Rep. 1916, 1919. Piercing the corporate veil is an equitable remedy used to curb injustices resulting from the improper use of a corporate entity. Because the remedy is equitable, no concrete formula exists under which a court will disregard the separate identity of the corporate entity. Use of this remedy depends entirely upon the circumstances of each case. See Comment, Piercing The Corporate Veil in Montana, 44 Mont.L.Rev. 91, 92-93 (1983). However, this Court has previously required two general factors to be present before a court will disregard the separate and distinct identity of a corporation: (1) The corporation must be a mere agent or alter ego of the parent company; and (2) the corporate cloak must have been used to defeat public convenience, justify wrong, perpetrate fraud, or to defend crime. State ex rel. Monarch Fire Ins. Co. v. Holmes (1942), 113 Mont. 303, 307-08, 124 P.2d 994, 996.

A subsidiary corporation may be the mere agent of a parent company for a particular transaction if the parent company exercises control over the conduct and activities of the subsidiary so that in effect the subsidiary is merely acting on behalf of the parent. State v. Holdren (1963), 143 Mont. 103, 110-11, 387 P.2d 446, 450. On the other hand, a subsidiary is the alter ego of the parent corporation if the corporate affairs of both are so intertwined that, in effect, each no longer has a separate identity. Holmes, 124 P.2d at

7

996. Many factors are considered to determine whether a subsidiary is merely the alter ego of a parent corporation. The full ownership of a subsidiary, use of the same people as directors and officers in both corporations, and engagement in the same general business enterprise may all be insufficient to indicate the subsidiary is merely an alter ego. Flemmer, 621 P.2d at 1042. Courts also look at such factors as the same type of day-to-day business activities of each corporation, sharing of the same address or name, the commingling of funds, undercapitalization of the subsidiary and failure to maintain separate business records. See, e.g., Thornock v. Pack River Management Co. (Mont. 1987), 740 P.2d 1119, 44 St.Rep. 1284; Flemmer, 621 P.2d 1038; Holdren, 387 P.2d 446; Shaffer v. Buxbaum (1960), 137 Mont. 397, 352 P.2d 83; Wilson v. Milner Motels, Inc. (1944), 116 Mont. 424, 154 P.2d 265; Scott v. Prescott (1924), 69 Mont. 540, 223 P. 490.

The facts asserted by Hando fail to raise a question of fact about whether NERCO controlled the painting activities of SCCC. The District Court did not err in holding that SCCC did not act as the agent of NERCO in regards to this particular transaction. NERCO admitted that it chose the general color scheme for the Mine and that its approval was necessary if SCCC wanted to purchase supplies in an amount over $50,000. Yet, the SCCC plant superintendent had the primary responsibility for making daily work assignments in the plant, including painting assignments, and the SCCC warehouse superintendent was responsible for recommending the paint that would be used. Further, Hando conceded in her deposition that SCCC provided her with the paint, dictated the method used to apply the paint, and chose the places to be painted.

Hando also failed to set forth facts sufficient to raise a question of fact about whether the business activities of SCCC were so intertwined with those of NERCO that SCCC was a mere alter ego of NERCO. The evidence shows that SCCC was a wholly-owned subsidiary of NERCO and that many of the same people served as officers and directors for both corporations. However, both did not share the same name, nor were they located in the same state; NERCO maintained corporate headquarters in Oregon while SCCC was located in Montana. Additionally, although both were engaged in the same general business, that being the mining and sale of coal, NERCO managed the overall operation and development of many coal mining activities in Montana, Wyoming, Indiana and Alabama, while SCCC was engaged in the day-to-day operations of the Spring Creek Mine in Decker, Montana. Further, Hando introduced no evidence indicating that the funds or the records of each corporation were commingled, or that SCCC was undercapitalized and thus incapable of operating as a separate corporate entity.

As a matter of law, we hold that NERCO had no duty to provide a safe work place for SCCC employees; the alleged facts failed to show that SCCC acted as an agent of NERCO in regards to the daily painting and upkeep activities of the Mine or that SCCC was merely an alter ego of NERCO. Moreover, Hando failed to assert any facts indicating SCCC was incorporated to "defeat public convenience, justify wrong, protect fraud, or defend crime." Holdren, 387 P.2d at 451. We also hold that no genuine material issue of fact exists in relation to the issue of whether an agency or alter ego in fact existed. Hando's argument that NERCO was actively involved in subsidiary activities is merely a conclusory statement without the support of any new facts, other than those generally discussed above. Hando also

failed to allege any facts showing that NERCO had an independent duty, because her employment was directly related to the physical operations of NERCO, to provide Hando with a safe work place. Hando was injured on the SCCC, and not the NERCO, job site while engaged in a job related to the daily upkeep of the SCCC Mine and while using paint purchased and owned by SCCC. Cf. Reynolds v. Burlington Northern, Inc. (1980), 621 P.2d 1028, 37 St.Rep. 1883 (holding that a parent corporation owed a duty to provide a safe work place to that subsidiary employee injured by equipment owned by the parent railroad corporation and while working on a job site belonging to the railroad). Consequently, we hold the District Court did not abuse its discretion when it granted summary judgment and held that NERCO did not have a duty to provide Hando with a safe place to work.

The second issue presented upon appeal questions whether workers' compensation insurance owned by SCCC would protect NERCO from liability for claims arising because of an unsafe SCCC work place. We need not discuss this issue having held that NERCO had no duty to provide Hando with a safe work place and thus may not be held liable for any injuries arising from the unsafe work place of its subsidiary.

The third issue, raised upon cross-appeal, challenges the District Court's holding that the statute of limitations was tolled until a medical diagnosis causally connected Hando's exposure to toxic paint fumes with her various continuing ailments. PPG and NERCO assert that the statute of limitations began to run in April of 1982 after her last on-the-job exposure to the paint which she believed caused her injuries. By statute, Hando had three-years from the date of this last injury to file a claim against NERCO and PPG. This three-year period expired in April of 1985, yet

10

Hando did not file her claim until October of 1985. PPG and NERCO therefore assert that Hando's claims against them are barred.

A three-year statute of limitations does indeed apply to tort claims or products liability claims. Section 27-2-204, MCA. The law sets such statutes of limitations as an equitable measure intended to prevent the litigation of stale claims by requiring that a party file a claim within a reasonable period of time while the evidence supporting the claim is still fresh. E.W. v. D.C.H. (Mont. 1988), 754 P.2d 817, 819, 45 St.Rep. 778, 780. The statute of limitations in any given case generally begins to run upon the occurrence of the last wrongful act relevant to the cause of action. The statute of limitations is not tolled until a plaintiff discovers her legal right to bring an action for known injuries. The statute also is not tolled until a plaintiff learns the facts out of which a known cause of action arose. Bennett v. Dow Chemical Co. (Mont. 1986), 713 P.2d 992, 994, 43 St.Rep. 221, 224. This Court has, however, tolled the statute of limitations until a plaintiff discovers the injury, or until he should have discovered the injury with the use of due diligence, if the injury is self-concealing. Johnson v. St. Patrick's Hosp. (1966), 148 Mont. 125, 417 P.2d 469. A statute of limitations has even been tolled until the legal cause of an injury is determined, although the injury itself is apparent, if equity so demands. Hornung v. Richardson-Merrill, Inc. (D.Mont. 1970), 317 F.Supp. 183. In Hornung, the Federal District Court Judge in Billings tolled the statute of limitations until the plaintiff discovered that the drug MER/29 may have caused his cataracts. Id at 185.

The facts in the present case indicate that although Hando was very much aware of those continuing physical,

11

emotional and mental ailments she suffered after her exposure to the paint, she did not know the cause of those injuries until May of 1984. Prior to that time, she and SCCC suspected that her ongoing ailments stemmed from her exposure to the paint manufactured by PPG. She even filed a workers' compensation claim in May of 1982 based upon this belief. However, the veracity of her belief was not known until May of 1984. Medical tests done in Chicago at that time provided Hando with a medical diagnosis that her continuing problems were due to a "sensitivity to petrochemicals," a sensitivity most likely triggered by her exposure to the PPG paint while working for SCCC in 1981-82.

Hando's failure to learn the cause of her ongoing injuries was not due to a lack of diligence on her part. Between 1982 and 1984, Hando saw numerous physicians, including physicians at the renowned Mayo Clinic in Minnesota, to determine the cause of her ongoing problems. No physician who examined Hando during this period attributed her continuing ailments to her exposure to the PPG paint. The facts in this case therefore are dissimilar to those in the E.W. case. In E.W., the plaintiff knew that the sexual molestation by her stepfather was tortious, she knew she suffered from psychological problems as a result of the tortious conduct by her stepfather, yet she failed to file a complaint until thirteen years after she reached the age of majority. See, E.W., 754 P.2d at 818. In contrast, Hando did not know that her exposure to the PPG paint caused her continuing medical problems, nor was her exposure to the paint obviously tortious. Further, she continued to seek a medical diagnosis for her ongoing problems. Consequently, we hold that the facts in the present case are comparable to those in Hornung, and not to those in E.W., and we likewise hold that the three-year statute of limitations did not begin

12

to run until a medical opinion was rendered in April-May of 1984 linking her injuries to her exposure to the PPG paint.

Hando filed her claims against PPG and NERCO in October of 1985, well within the three-year statute of limitations. PPG and NERCO therefore are not entitled to summary judgment on this issue and the District Court did not abuse its discretion when it denied the cross-appellants' motions for summary judgment.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13