JUSTICE COTTER
delivered the Opinion of the Court.
¶1 M. Elizabeth Nelson (Elizabeth), appeals from the order of the Sixteenth Judicial District Court, Custer County, granting summary judgment in favor of Robert Y. Nelson (Robert), on the grounds that Elizabeth’s cause of action was barred by the three-year statute of limitations.
¶2 The sole issue is whether the District Court erred in granting summary judgment to Robert. We reverse and remand.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 On May 14, 1998, Elizabeth filed a complaint, alleging she suffered injuries while working on a ranch operated by Robert. At the time of her injuries, Elizabeth and Robert were married, but the couple later divorced. As part of the ranch operation, Robert applied pesticides and insecticides and also inoculated sheep against sore mouth disease. Elizabeth assisted Robert with ranching activities on a regular basis from 1989 until their divorce proceedings began in 1994. Elizabeth claimed that on several occasions from 1989 to 1994, she was exposed to pesticides and insecticides (chemicals) as a result of Robert’s improper methods of application. Additionally, in July, 1989, while Elizabeth was holding a sheep in preparation for inoculation, Robert’s assistant, Merle Nelson, accidentally injected Elizabeth’s hand with bovine ecthyma vaccine, a vaccine containing the live virus for sore mouth disease. Elizabeth became dizzy immediately after the injection and lapsed into unconsciousness. After regaining consciousness, Elizabeth continued assisting with inoculating sheep throughout the rest of the day.
¶4 From 1989 through 1998, when Elizabeth filed the complaint in this matter, Elizabeth received extensive medical evaluations and treatments for numerous physical ailments which either surfaced or worsened subsequent to her exposure to the chemicals and the vaccine. Elizabeth suffered from many medical problems including rheumatoid arthritis, sleep apnea, Pickwithian syndrome, recurrent blistering on her feet and in her mouth, diabetes, hypothyroidism, headaches, and *331 severe upper respiratory problems.
¶5 Elizabeth’s physicians were uncertain of the possible cause and effect relationship between her numerous physical ailments and her exposure to chemicals and the vaccine. One of her physicians, L. Keith Scott, M.D. (Dr. Scott), noted in an August 11,1995 letter that:
The cause of much of her problem is still in question. She was exposed to multiple chemicals and has been seen by the toxicology unit at the University of Colorado. They did find that she did have some over exposure to certain chemicals but still have not addressed cause and effect relation.
¶6 Elizabeth sought medical treatment from Richard A. Nelson, M.D. (Dr. Nelson) on March 6, 1996. Dr. Nelson contacted the Centers for Disease Control in order to obtain information on human reactions to injection with bovine ecthyma vaccine, but no information was available, as Elizabeth was the only known person to have ever been injected with the vaccine. Regarding his belief as to a possible causal connection, Dr. Nelson stated in a letter dated May 20, 1996, that:
[Elizabeth] has a significant list of physical disorders, not the least of which are asthma, reactive airway disease, rheumatoid arthritis, toxic exposure to nervous system associated with agricultural chemicals including herbicides, pesticides, and being directly injected with the vaccine for sore mouth disease .... This resulted in a systemic autoimmune reactivity associated with skin and mucus membrane disorders.
¶7 Elizabeth filed her complaint against Robert on May 14,1998, for damages incurred as a result of her exposure to the pesticides and insecticides and the injection of the bovine ecthyma vaccine. Robert moved for summary judgment, arguing that Elizabeth’s cause of action was barred by the three-year statute of limitations for negligence. Robert argued that Elizabeth knew of her injuries more than three years before this action was filed, as evidenced by a Motion for Modification of Separation Agreement she filed in the parties’ marital action on May 10, 1995. In the motion, Elizabeth’s attorney represented that “[a]t the time and entry of the decree, [Elizabeth] suffered from certain damages which were undisclosed or unknown to her or to her physicians. She had undergone an extensive amount of testing, evaluation and examination, but no determination of the cause of her problems existed.” The motion also stated:
After entering into the Separation Agreement, the doctors now believe that the cause of her problem may very well stem from certain poisons used on the ranch ....
The injuries suffered as a result of improper use of these *332 chemicals ... constitute a life threatening and life long problem....
¶8 Following a hearing on October 25, 2000, the District Court entered an order and memorandum granting Robert’s summary judgment motion. The court concluded that Elizabeth’s claim accrued when she was accidentally injected with the bovine vaccine in July of 1989, and that her complaint was therefore barred by the three-year statute of limitations. Elizabeth appeals the District Court’s grant of summary judgment.
STANDARD OF REVIEW
¶9 We review appeals from summary judgment rulings de novo. Sleath v. West Mont Home Health Services, 2000 MT 381, ¶ 19, 304 Mont. 1, ¶ 19, 16 P.3d 1042, ¶ 19 (citation omitted). When we review a district court’s grant of summary judgment, we apply the same evaluation that the district court uses, based on Rule 56, M.R.Civ.P. Sleath, ¶ 19 (citation omitted). We set forth our inquiry as follows:
The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.
Sleath, ¶ 19 (citing Oliver v. Stimson Lumber Co., 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21). We review a district court’s interpretation of law to determine if it is correct. Steinback v. Bankers Life and Cas. Co., 2000 MT 316, ¶ 11, 302 Mont. 483, ¶ 11, 15 P.3d 872, ¶ 11 (citation omitted).
DISCUSSION
¶10 Did the District Court err when it granted summary judgment to Robert?
¶11 In its memorandum and order granting summary judgment, the District Court concluded Elizabeth was barred by the three-year statute of limitations under § 27-2-204(1), MCA, because Elizabeth immediately suffered injuries following the injection, and thus “sustained obviously tortious injuries in July, 1989.” The court distinguished Elizabeth’s claim from Hando v. PPG Industries, Inc. (1989), 236 Mont. 493, 771 P.2d 956, wherein we held that the onset of the statute of limitations is determined by applying the discovery rule and establishing when the injured person knew, or in the exercise of *333 due diligence, should have known of the facts constituting the cause of action. The District Court reasoned that Elizabeth’s injuries following the injection, unlike Hando’s latent injuries which developed over time, were “obvious” and “immediate,” noting Elizabeth instantly suffered unconsciousness after being injected with the vaccine. Accordingly, the court did not consider the averments in Elizabeth’s motion to modify the separation agreement.
¶12 Elizabeth argues the statute of limitations was tolled until the date her physical ailments were causally connected to the chemicals and the vaccine injection; thus her claim (filed in May, 1998) was filed within three years from the date Dr. Nelson first established the causal connection (May, 1996). Elizabeth contends that although she lost consciousness after the injection, the vaccine did not leave immediately noticeable effects, and that her subsequent physical problems surfaced over the course of time, and were not causally linked to the injection until 1996. Elizabeth contends the District Court erred in its interpretation of Hando, arguing Hando is not distinguishable from her situation.
¶13 Robert agrees with the District Court and asserts that this case is not controlled by Hando, arguing that Elizabeth’s injury was obviously tortious, unlike Hando’s latent disease or injury. Robert also alleges Elizabeth knew of the causal connection between the injection and her physical ailments as early as May 10, 1995, as evidenced by her motion for modification of the settlement agreement.
¶14 The statute of limitations in Montana in an action for negligence is three years. Section 27-2-204(1), MCA. The period of limitation begins when the claim or cause of action accrues and is not postponed because of lack of knowledge of the claim or cause of action by the party to whom it has accrued. Section 27-2-102(2), MCA. However:
[t]he period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if:
(a) the facts constituting the claim are by their nature concealed or self-concealing.
Section 27-2-102(3), MCA. Addressing this so-called “discovery rule,” we have held that “when the facts constituting a claim or cause of action for personal injury are, by their nature, concealed or self-concealing,” the period of limitations does not begin to run “until the injured party has discovered the facts constituting the claim or, with *334 due diligence, should have discovered those facts.” Gomez v. State, 1999 MT 67, ¶ 10, 293 Mont. 531, ¶ 10, 975 P.2d 1258, ¶ 10 (citing § 27-2-102(3)(a), MCA; and Kaeding v. W.R. Grace & Co., 1998 MT 160, ¶ 17, 289 Mont. 343, ¶ 17, 961 P.2d 1256, ¶ 17).
¶15 We applied these principles in Hando, where the plaintiff was exposed to paint fumes while working at a coal processing plant in 1981 and 1982, and in the years following her exposure, suffered from many physical, mental, and emotional reactions. Hando, 236 Mont. at 495-96, 771 P.2d at 958. When Hando was exposed to the paint in 1982, she briefly lost consciousness, and her supervisor contacted the poison control center and arranged for her to be examined. Hando, 236 Mont. at 495, 771 P.2d at 958. Between 1982 and 1984, none of the numerous physicians who examined Hando would attribute her continuing ailments to her exposure to the paint. Hando, 236 Mont. at 502, 771 P.2d at 962.
¶16 Hando began receiving worker’s compensation benefits for her ailments in May of 1982. However, she did not commence a tort action until October, 1985, following her receipt of a medical opinion in early 1984 that her problems were caused by her toxic exposure to paint. Hando, 236 Mont. at 496, 771 P.2d at 958.
¶17 In recognizing that when an injury is self-concealing, the statute of limitations is tolled until a plaintiff discovers her injury, or until she should have discovered her injury with the use of due diligence, we found that although Hando was “very much aware” of her medical problems and that she “suspected that her ongoing ailments stemmed from her exposure” to paint, she did not know the cause of those injuries until May of 1984, when “the veracity of her belief’ was finally known. Hando, 236 Mont. at 501, 771 P.2d at 962. We noted that although Hando diligently sought to establish the cause of her ailments, none of the physicians who examined her prior to 1984 attributed her problems to her exposure to paint, and thus held the statute of limitations on Hando’s claim was tolled until a medical opinion confirmed the causal connection between her symptoms and her injury (“three-year statute of limitations did not begin to run until a medical opinion was rendered in April-May of 1984 linking her injuries to her exposure to the PPG paint”) Hando, 236 Mont. at 502, 771 P.2d at 962.
¶18 We conclude the District Court erred in distinguishing Elizabeth’s situation from our holding in Hando. In both Hando and here, the plaintiff lacked knowledge concerning the ultimate causal link between the ailments suffered by her and the exposures each had experienced (i.e., paint or chemicals and the vaccine). Both Hando and Elizabeth *335 suspected the cause of her injuries and diligently sought medical treatment and diagnosis, but neither was certain of the causal relationships until later confirmed by a physician. Notably, both plaintiffs suffered immediate effects from the exposure as evidenced by loss of consciousness, but both plaintiffs also suffered other continuing effects that neither could have predicted at the time of the exposure. Moreover, both plaintiffs asserted beliefs or suspicions that her medical problems stemmed from exposure to paint/chemicals prior to filing her respective cause of action: Hando signed a workers’ compensation claim in May of 1982, stating her belief that her problems stemmed from exposure to paint; and Elizabeth filed a motion to modify a marital settlement wherein she recited suspicions concerning problems possibly caused by her exposure to pesticides. Therefore, we conclude this case is on all fours with Hando, and disagree with the District Court’s conclusions to the contrary.
¶19 Although in his dissent, Justice Rice agrees Hando applies to Elizabeth’s factual situation-albeit by a slightly different analysis-he goes on to argue Elizabeth’s claim should be dismissed under the doctrine of judicial estoppel. First, we note that Robert did not assert the doctrine of judicial estoppel in either his Motion for Summary Judgment, or on appeal. Recently, “we decline[d] to consider arguments based on the doctrine of judicial estoppel that are raised for the first time on appeal.” Wheelsmith Fabrication v. Dept. of Labor, 2000 MT 27, ¶ 15, 298 Mont. 187, ¶ 15, 993 P.2d 713, ¶ 15 (citation omitted).
¶20 Turning to the merits of Justice Rice’s dissent, although it correctly notes the purpose of judicial estoppel is to prevent the use of inconsistent assertions and to prevent parties from playing fast and loose with the courts, it fails to apply the rationale underlying the doctrine to the facts presented here. Judicial estoppel is a doctrine created by judges that:
seeks to prevent a litigant from asserting a position [that is] inconsistent, conflicts with, or is contrary to one that she has previously asserted in the same or in a previous proceeding; it is designed to prevent litigants and their counsel from playing fast and loose with the courts and to protect the integrity of the judicial process. Judicial estoppel doctrine is equitable and is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories. The purpose of the doctrine of judicial estoppel is to reduce fraud in the legal process by forcing a modicum of consistency on the repeating litigant.
*336 28 Am. Jur. 2d Estoppel and Waiver § 74 (2000).
¶21 Contrary to assertions made by Justice Rice in his dissent, there are no such “chameleonic” machinations here. Throughout her illnesses, Elizabeth diligently sought to establish the link between her injection and exposures and her illness. She is not now changing her theory of liability, nor is she trying to prevail on opposite theories. Rather, she waited to bring her claim until she could prove the necessary nexus between the suspected cause of her ailments and her ongoing medical conditions. There is simply no evidence that Elizabeth is seeking to play fast and loose with the courts or trying to take advantage of earlier proceedings.
¶22 Finally, contrary to the argument in both dissents, judicial estoppel does not apply here because Elizabeth’s current position is not inconsistent with what she averred in May of 1995. The doctrine of judicial estoppel binds a party to her judicial declarations, and precludes her from taking a position inconsistent with them in a subsequent action or proceeding. Kauffman-Harmon v. Kauffman, 2001 MT 238, ¶ 15, 307 Mont. 45, ¶ 15, 36 P.3d 408, ¶ 15. There is simply no actual inconsistency between Elizabeth’s speculation on the possible causes of her medical condition when seeking modification of her marital settlement, and her current assertion, following Dr. Nelson’s diagnosis of May 20, 1996, that there is a medically established causal relationship between the combination of the injection with her exposure to chemicals, and her medical condition.
¶23 Moreover, we do not agree that Elizabeth’s motion to modify the settlement agreement definitively established her knowledge of the causal connection between her injuries and the chemicals and injection. On August 11, 1995, nearly three months after the motion was filed, there was still uncertainty as to the causal connections as evidenced by Dr. Scott’s letter which stated: “[The toxicology unit] did find that [Elizabeth] did have some over exposure to certain chemicals but [they] still have not addressed cause and effect relation. We are looking into these cause and effect relationships and more information should be forthcoming.” Moreover, the statements in Elizabeth’s motion are speculative as to the cause of her injuries: “doctors now believe that the cause of her problem may very well stem from certain poisons used on the ranch ...” (emphasis added).
¶24 If the state of Elizabeth’s knowledge, or her diligence in discovering the causal link between the injection and chemicals and her ailments was disputed, this issue could not be resolved on summary judgment. The rule in Montana, and in the majority of jurisdictions, is that when there is conflicting evidence as to when a *337 cause of action accrued, the question of whether an action is barred by the statute of limitations is for the jury to decide. Hill v. Squibb & Sons, E.R. (1979), 181 Mont. 199, 212, 592 P.2d 1383, 1390-91 (citation omitted). See also, McCormick v. Brevig, 1999 MT 86, ¶¶ 102-103, 294 Mont. 144, ¶¶ 102-103, 980 P.2d 603, ¶¶ 102-103 (it is for the trier of fact to determine at what point plaintiff discovered or should have discovered through due diligence any negligence by the accountant when the existence of a trust was self-concealing); and Werre v. David (1996), 275 Mont. 376, 384, 913 P.2d 625, 630 (the point at which plaintiff discovered a connection between the sexual abuse she experienced as a child and her mental disorders as an adult was a question of fact for the jury; thus, denial of defendant’s motion for a directed verdict was correct).
¶25 However, Robert did not challenge Elizabeth’s diligence in discovering the causal connection, nor did he dispute the date of Dr. Nelson’s conclusions concerning causation. Instead, Robert asserted Elizabeth’s injuries were distinguishable from those in Hando because they were immediate and obviously tortious, and that Elizabeth’s averments in her motion indicated an earlier knowledge of the causal link than that established by Dr. Nelson in May of 1996. Other than his interpretation of Elizabeth’s motion, Robert asserted no independent facts, such as physicians’ opinions or medical evaluations, that imputed knowledge of the causal link to Elizabeth prior to May of 1996. We have concluded that Elizabeth’s averments in her motion to modify did not establish she knew of a causal connection between her injuries and the chemicals and injection at that time. Thus, there appears to be no factual dispute as to the timing of Elizabeth’s knowledge of the causal connections, such as would require remand for further factual determination.
¶26 Therefore, it appears there is no genuine issue of material fact as to whether Elizabeth discovered, or in the exercise of due diligence should have discovered, the causal relationship between her ailments and the combination of the chemicals and the vaccine, more than three years before she filed suit. Therefore we conclude as a matter of law that Elizabeth’s complaint was timely filed.
¶27 Accordingly, the District Court’s order granting summary judgment is reversed and this case is remanded for trial on the merits.
CHIEF JUSTICE GRAY, JUSTICES NELSON and REGNIER concur.