DA 08-0439

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 149

JULIE CHRISKE,

      Plaintiff and Appellant,

  v.

STATE OF MONTANA, ex rel.,
Department of Corrections and Institutions,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Jefferson, Cause No. DV 04-10288
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      John C. Doubek, Doubek & Pyfer, Helena, Montana

      For Appellee:

      Curt Drake and Michael A. Kauffman, Drake Law Firm, Helena, Montana

Submitted on Briefs:  May 25, 2010

Decided:  July 13, 2010

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    The Fifth Judicial District Court, Jefferson County, granted the Montana Department of Corrections and Institutions' (the State) motion for summary judgment, concluding that the statute of limitations had expired. Julie Chriske (Chriske) appeals.

¶2    The sole issue is whether the District Court erred when it concluded that Chriske knew or should have known that smoking caused her lung disease before August 2, 2001.

## BACKGROUND

¶3    From 1971 through 1973, Chriske attended the Mountain View School. Chriske alleges that Mountain View rewarded good behavior by giving cigarettes to the residents at the school. From 1973 to 1975, Chriske received periodic visits from State workers for aftercare after her release from Mountain View School. Chriske claims that the State aftercare workers allowed her to purchase cigarettes and occasionally supplied her with cigarettes. She alleges that the actions of the State workers caused her to become addicted to cigarettes which led to her developing "various tobacco-related diseases."

¶4    Over the next few decades, Chriske smoked from one to four packs of cigarettes a day. During this time, she suffered lung problems, including a chronic cough, wheezing, and asthma. In October 1991, a St. Peter's Hospital emergency room physician diagnosed Chriske with "small airway obstruction" because her lung function was at 72% of expected. The physician recommended Chriske stop smoking and enrolled her in a smoking cessation program. This program required testing that showed Chriske suffered from shortness of breath and low blood oxygen saturation. As part of the program, Chriske filled out a

questionnaire in which she stated that she "continued smoking despite knowledge of having persistent or recurrent physical problems that [were] caused or exacerbated by the use of the substance." A respiratory therapist also told Chriske that she should quit smoking to help alleviate her lung problems.

¶5 Although Chriske's training as an addiction counselor included information about tobacco addiction and she testified she knew about the link between smoking and lung disease as early as the 1980s, she continued to smoke cigarettes throughout the 1990s. During this time, her decreasing lung function began to affect her sleep. She stopped playing golf because it was too strenuous and walking or climbing a flight of stairs became a challenge for her. Chriske's long-time roommate, Sanna Yost, noticed a distinct wheeze in Chriske's breathing and a decline in her energy levels. Yost testified that she and Chriske discussed quitting smoking as a solution to her lung problems. Yost also testified that there is "no question" in her mind that Chriske knew about the potential adverse effect of smoking, including lung disease, for many years.

¶6 From the mid- to late-1990s, Chriske regularly discussed her lung problems with Dr. James Burkholder, who then prescribed various smoking cessation medications. On at least a few occasions, Dr. Burkholder told Chriske that her asthma and breathing problems were caused by her smoking habit. In 1998, Chriske saw a nurse practitioner, Beth Sirr, who found that Chriske's lung function had decreased to 66% of expected. Chriske admitted to Sirr that her coughing increased with smoking. Sirr diagnosed her with "reactive airway

disease," another term for asthma, and prescribed an inhaler and nicotine gum. Sirr testified that she would have told Chriske that smoking increased her risk of lung disease.

¶7 On August 2, 2001, Chriske visited Dr. Jeannie Brandt, an internist, complaining of fatigue. Dr. Brandt diagnosed Chriske with Chronic Obstructive Pulmonary Disease (COPD).

¶8 Chriske filed her complaint on August 2, 2004, claiming that it was not until August 2, 2001, when she was diagnosed with COPD that she learned her smoking caused her lung disease. The District Court granted partial summary judgment on Chriske's claims prior to 1973 under the then-existing principle of sovereign immunity.

¶9 The State then moved for summary judgment, arguing that the remainder of Chriske's claims were barred by the statute of limitations because Chriske knew her smoking caused her lung disease in 1991 at the latest when she was diagnosed with "small airway obstruction." Chriske reiterated her argument that she was not aware of the causal relationship between smoking and her lung disease until Dr. Brandt diagnosed her with COPD on August 2, 2001.

¶10 The District Court granted summary judgment in favor of the State. In a thorough and well-written analysis, the District Court concluded that Chriske failed to carry her burden to show that a genuine issue of material fact existed that she "both knew and should have discovered, through due diligence, that she suffered from a small airway obstructive tobacco-related disease before August 2, 2001."

4

¶11 Chriske appeals, asserting she had "no idea and had never been advised by a doctor that she was suffering from something [that] was irreversible and caused by smoking" until her diagnosis of COPD on August 2, 2001. Thus, according to Chriske, because she filed her complaint within three years of the diagnosis, the District Court erred when it determined that the statute of limitations had run.

¶12 The State again argues that the period of limitations began in at least 1991. The State asserts that by 1991 Chriske was subjectively aware of the causal relationship between smoking and her lung problems because she admitted as much during the smoking cessation program in 1991 and testified that she knew smoking caused lung disease as early as the 1980s. In addition, the State contends that a reasonable person in Chriske's circumstances would have known that her lung problems were caused by her smoking long before 2001 because healthcare providers had informed her several times that smoking caused and exacerbated her breathing and lung problems.

## STANDARD OF REVIEW

¶13 We review a district court's grant of summary judgment de novo, applying the same standard as the district court pursuant to M. R. Civ. P. 56. *Kaeding v. W.R. Grace & Co.*, 1998 MT 160, ¶ 15, 289 Mont. 343, 961 P.2d 1256. The movant must demonstrate that no genuine issues of material fact exist. Once the movant carries his burden, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation that a genuine issue does exist. If the court determines that genuine issues of fact do not exist, it must then determine whether the moving party is entitled to judgment as a matter of law. *Id.*

5

We review the legal determinations made by a district court as to whether they are correct. *Id.*

## DISCUSSION

¶14 *Did the District Court err when it concluded that Chriske knew or should have known that smoking caused her lung disease before August 2, 2001?*

¶15 An action for personal injury must be commenced within three years from the time that the claim or cause of action accrues. Section 27-2-204, MCA. A claim or cause of action accrues "when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action." Section 27-2-102(1)(a), MCA. Generally, the claimant's lack of knowledge of the claim or cause of action, or its accrual, does not toll the beginning of the period of limitations. Section 27-2-102(2), MCA. However, when the facts constituting the claim are by their nature concealed or self-concealing, the period of limitations does not commence "until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party . . . ." Section 27-1-102(3), MCA. The District Court concluded and the parties do not dispute that lung disease is, by its nature, self-concealing. Thus, the issue is whether Chriske filed her complaint more than three years after she discovered or, in the exercise of due diligence, should have discovered that her smoking caused her "various tobacco-related diseases."

¶16 Chriske argues that the statute of limitations did not begin to run until her medical diagnosis of COPD on August 2, 2001, even though she was told by medical professionals

6

for years that her smoking caused her lung problems. To support her argument, Chriske relies on *Hando v. PPG Industries, Inc.*, 236 Mont. 493, 771 P.2d 956 (1989), and *Nelson v. Nelson*, 2002 MT 151, 310 Mont. 329, 50 P.3d 139. However, both *Hando* and *Nelson* are easily distinguished.

¶17 The plaintiff in *Hando* suspected for years that her exposure to paint caused her physical illness, but physicians repeatedly told her that her physical problems were not related to the paint exposure. *Hando*, 236 Mont. at 495-96, 771 P.2d at 958. We concluded that the statute of limitations began to run only when a physician finally confirmed Hando's suspicions. *Hando*, 236 Mont. at 502, 771 P.2d at 962. The opposite is true here. Chriske's healthcare providers warned her since the early 1990s that smoking caused lung disease.

¶18 *Nelson* is equally inapposite. Like Hando, Nelson suspected that her physical ailments were the result of her exposure to chemicals while working on a ranch, but physicians repeatedly expressed uncertainty about the causal connection for years. *Nelson*, ¶ 5. We determined that the statute of limitations did not begin to run until a physician finally stated his belief that Nelson's exposure to chemicals was connected to her physical problems. We held that before the physician's diagnosis, Nelson lacked the knowledge about the causal link. *Nelson*, ¶ 18. Again, Chriske's situation is distinguishable because she was advised repeatedly throughout the 1990s about the causal connection between smoking and lung disease.

¶19 More applicable to this case is our decision in *Kaeding*, where we held that because the plaintiff's past medical records contained several references to asbestosis and the plaintiff

7

admitted he knew that exposure to vermiculite could cause asbestosis, the statute of limitations began to run before the medical diagnosis of asbestosis. *Kaeding*, ¶¶ 23-24. Importantly, we said, "in *Hando*, this Court did not hold that a medical diagnosis must be rendered before the statute of limitations may run." *Kaeding, ¶* 22.

¶20 Unlike the plaintiff's situation in *Nelson* and *Hando*, Chriske's healthcare providers confirmed that Chriske's smoking was causing her lung problems numerous times before 2001. Moreover, Chriske admitted she knew that smoking caused lung disease as early as the 1980s. Thus, Chriske's situation is more analogous to *Kaeding* and her reliance on *Nelson* and *Hando* is misplaced. The District Court did not err when it concluded that Chriske had discovered or should have discovered that her smoking caused her lung disease prior to August 2, 2001.

## CONCLUSION

¶21 Chriske failed to carry her burden to show that an undisputed issue of material fact existed that she discovered, or should have discovered in the exercise of due diligence, the causal relationship between smoking and her physical illness prior to August 2, 2001. The District Court was correct when it concluded as a matter of law that the statute of limitations had run by the time she filed her complaint.

¶22 Affirmed.

/S/ MICHAEL E WHEAT

8

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON