DA 13-0464

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 114

J. L. G., BNY,

    Plaintiff and Appellant,

v.

M. F. D.,

    Defendant and Appellee.


APPEAL FROM:    District Court of the Fifth Judicial District,
                In and For the County of Madison, Cause No. DF-29-2012
                Honorable Kurt Krueger, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

            Terry F. Schaplow, P.C., Attorney at Law; Bozeman, Montana

        For Appellee:

            Todd R. Hillier; Schraudner & Hillier, PLLC; Bozeman, Montana


                            Submitted on Briefs:  March 26, 2014
                                      Decided:  April 29, 2014


Filed:

        _____
                        Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Plaintiff and Appellant Janet Lynn Gates initiated two legal proceedings pertaining to the paternity of her minor daughter, one in Silver Bow County against Douglas Bruce Young, and one several months later in Madison County against the Defendant Michael Donahue. Donahue filed a motion to dismiss the action against him, and Gates filed a motion to require Donahue to undergo a paternity test. She also sought to compel Young to undergo a sterility test. The Madison County District Court granted Donahue's motion to dismiss, and denied Gates' motion. Gates appeals. We affirm.

## ISSUES

¶2 Did the District Court err in granting Donahue's motion to dismiss?

¶3 Did the District Court err in denying Gates' motion?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Between 2006 and 2012, Janet Gates and Douglas Young were involved in an intimate relationship. While Young maintained a residence separate from Gates, Young frequently stayed with Gates and her children in Gates' home and at times paid Gates' household bills. In April 2009, Gates gave birth to daughter BNY. Young was present in the delivery room at the time of birth. The following day, Young completed a Montana Certificate of Live Birth for BNY naming himself as the child's father. Since her birth, Young has held himself out as BNY's father and prior to the couple's separation, participated in parenting BNY.

2

¶5 On January 25, 2012, after Gates and Young had terminated their relationship, Gates filed a Parenting Petition in the Second Judicial District Court, Silver Bow County (Cause No. DR 12-36KK), Judge Kurt Krueger presiding. In the petition, Gates sought primary residential custody of BNY. She also named Young as BNY's father and asked that Young be granted supervised parenting time. Gates requested that the court establish support and health care payment obligations for Young. Also in this proceeding, the parties stipulated to participate in DNA paternity testing. The test was conducted by Laboratory Corporation of America on or around March 27, 2012, and indicated a 99.99% probability that Young was BNY's natural father. On April 18, 2012, the Silver Bow County district court issued an interim order granting Gates' request for residential custody and allowing Young supervised parenting time.

¶6 On April 30, 2012, while the Silver Bow County proceeding was pending, Gates filed a "Complaint for Court-Ordered Paternity Test, for Appointment of Guardian Ad Litem, etc." in the Montana Fifth Judicial District Court, Madison County (Cause No. DF-29-2012-1), Judge Loren Tucker presiding. In this complaint, Gates sought a court order requiring Donahue to undergo a paternity test to determine if Donahue was BNY's father. The complaint did not reference Young or the pending action in Silver Bow County. Gates claimed that she had engaged in sexual intercourse with Donahue approximately nine months before BNY's birth.

¶7 On May 16, 2012, relying upon M. R. Civ. P. 12(b)(6), Donahue moved to dismiss Gates' complaint arguing that Gates' parenting action in Silver Bow County had

established by DNA testing that Young was BNY's father. Donahue asserted that Gates' failure to inform the Madison County District Court of the Silver Bow County proceedings was tantamount to abuse of process, if not fraud on the court. He requested dismissal of the action against him for failure to state a claim upon which relief could be granted. In the alternative, he asked the District Court to grant him summary judgment based upon the existing DNA paternity results. He further prayed for an order requiring Gates to pay his legal fees.

¶8     Gates responded that Donahue's motion must be treated as a motion for summary judgment because it included references to documents outside the pleadings submitted in the Madison County proceeding. Further, she maintained that Young was sterile and consequently could not have fathered BNY. Gates contended that BNY's conception date coincided with her sexual encounter with Donahue rather than Young, and that the DNA tests indicating Young was the father were flawed.

¶9     On June 8, 2012, per Gates' motion to substitute Judge Tucker, Judge Krueger assumed jurisdiction over this case as well. On June 13, 2012, Donahue submitted that under § 40-6-105(3), MCA, Gates had failed to rebut the presumption that Young was BNY's natural father. He further claimed that the venue for such a rebuttal was in the paternity action in Silver Bow County. Donahue argued that Gates' action against him in Madison County was an action under § 40-6-107(2), MCA, "to determine the existence of the father and child relationship with respect to a child who has no presumed father

4

under § 40-6-105, [MCA]." He claimed that the undisputed determination that Young was BNY's father made a § 40-6-107, MCA, action against him inappropriate.

¶10 On April 1, 2013, Gates moved for an order requiring Donahue to undergo a blood DNA test and Young to undergo a sterility test. Donahue responded that he had already paid for and submitted to a buccal swab DNA test and that Gates then refused to cooperate with the remaining requirements of the test, *i.e.*, swabs from Gates and BNY. Donahue also noted that if Young was ordered to undergo a sterility test four years after the birth of the child, it would not prove whether Young was sterile at the time BNY was conceived.

¶11 The Madison County District Court conducted a three-day hearing commencing on April 24, 2013, at which it considered the multiple outstanding motions filed in both court proceedings. At the conclusion of the first day of the hearing, the District Court orally granted Donahue's motion to dismiss and denied Gates' motion for paternity and sterility tests. On May 27, 2013, Gates moved to alter or amend the judgment. On May 29, 2013, the District Court issued its written order memorializing its oral ruling from the April hearing. On June 17, Gates filed an amended motion to alter and amend the judgment and on June 20, the Madison County District Court denied Gates' motions to amend. Gates filed a timely appeal.

**STANDARD OF REVIEW**

¶12 We review a district court's grant of summary judgment de novo. Under M. R. Civ. P. 56(c), the moving party must establish both the absence of a genuine issue

5

of material fact and entitlement to judgment as a matter of law. If this is accomplished, the burden shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue of material fact exists. If no genuine issues of material fact exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. *Dovey v. Burlington Northern Santa Fe Ry.*, 2008 MT 350, ¶ 12, 346 Mont. 305, 195 P.3d 1223 (internal citations omitted).

**DISCUSSION**

¶13 *Did the District Court err in granting Donahue's motion to dismiss?*

¶14 In its May 29 Order, the District Court granted Donahue's Rule 12(b)(6) motion to dismiss. The court explained that under the Uniform Parentage Act (UPA), specifically § 40-6-105(1)(d)-(f), MCA, Young was presumed to be BNY's natural father. Notably, the court found that: (1) Young had acknowledged paternity when he completed BNY's birth certificate stating he was the child's father; (2) Gates had acknowledged Young's paternity in the Silver Bow County proceeding; (3) Young had not rescinded his acknowledgement of paternity, and; (4) DNA paternity testing had established a 99.9% probability that Young was BNY's biological father. Additionally, the court found that absent expert testimony, Gates had failed to rebut the presumption of paternity; therefore, she could prove no set of facts in support of the claim against Donahue that would entitle her to relief. As a result, the District Court granted Donahue's motion to dismiss with prejudice. It further denied Gates' motion for blood testing and sterility testing as moot.

6

¶15 Gates argues on appeal that the District Court erroneously dismissed the action under Rule 12(b)(6) after considering evidence outside the pleadings—specifically, the DNA and paternity acknowledgment evidence presented in the Silver Bow County case as well as testimonial evidence from Gates, Young and the child's guardian ad litem. Gates asserts the court should have addressed the motion as one for summary judgment under M. R. Civ. P. 56(c)(3).

¶16 Gates claims that the evidence she presented raised several genuine issues of material fact as to Young's ability to father a child, the likelihood of his having fathered BNY, and the efficacy of the DNA paternity tests. Gates' evidence consisted of personal observation, photographs presented to establish facial similarities, and internet searches conducted by Gates. She asserts that her claim of intercourse with Donahue during the month BNY was conceived constitutes the required "preponderance of the evidence" to rebut the presumption of paternity. Relying on extrajurisdictional caselaw, she opines that expert witness testimony is not required to rebut scientific evidence of paternity.

¶17 Section 40-6-105, MCA, of the UPA provides in relevant part:

> (1) A person is presumed to be the natural father of a child if any of the following occur:
>
> . . .
>
> (d) while the child is under the age of majority, the person receives the child into the person's home and openly represents the child to be the person's natural child;
>
> (e) the child's mother and the child's alleged father acknowledge the alleged father's paternity of the child in a paternity acknowledgment form that is provided by the department of public health and human services. . . .

7

(f) the scientific evidence resulting from a blood test, whether ordered by a court or administrative agency of competent jurisdiction or agreed to by the parties, shows a 95% or higher statistical probability of paternity . . . .

¶18 We first address Gates' claim that the District Court erroneously dismissed the case under Rule 12(b)(6), rather than deciding the case under Rule 56(c)(3). While we acknowledge that the District Court should have analyzed Donahue's motion as a motion for summary judgment rather than a motion to dismiss based upon the court's reliance on evidence outside the pleadings, it is well-established that we will affirm a district court's ruling if it reached the correct result albeit for the wrong reason. *Kichnet v. Butte-Silver Bow County & Mont.*, 2012 MT 68, ¶ 19, 364 Mont. 347, 274 P.3d 740. Therefore we will review the District Court's order under the Rule 56(c) standard and determine if the District Court reached the correct result in dismissing the action.

¶19 As noted above, the District Court relied upon § 40-6-105(1)(d)-(f), MCA, in concluding that a rebuttable presumption of paternity had arisen under the UPA. We conclude that the District Court was correct in its application of § 40-6-105(1)(d) and (f), MCA. It is undisputed that Young received BNY into his home and openly represented her as his natural child. It is equally undisputed that a DNA test established that Young was BNY's father to a 99.99% probability. Additionally, while Gates attempted to challenge Young's paternity by repeatedly claiming Young was sterile, a witness testified at the hearing that she and Young had had a child together in December 2002.

¶20 Gates argued against the efficacy of the scientific DNA tests with internet research and photographic evidence purporting to show the dissimilarity of facial features between

8

BNY and Young. Gates argues on appeal that under § 40-6-105(3), MCA, she was not required to provide expert testimony to rebut the presumption of paternity. We acknowledge that the statute allows the presumption to be rebutted by a "preponderance of the evidence." However, Gates simply could not rebut the results of the DNA test with speculation, personal internet searches, and photographs. As we noted in *New Hope Lutheran Ministry v. Faith Lutheran Church of Great Falls, Inc*., 2014 MT 69, ¶ 48, 374 Mont. 229, ___ P.3d ___, once the party moving for summary judgment establishes the absence of genuine issues of material fact, the burden shifts to the party opposing summary judgment to present "substantial evidence" to establish the existence of a genuine issue of material fact, as opposed to mere denial, speculation, or conclusory statements. Gates had more than a year to prepare such "substantial evidence" to rebut the presumption and she failed to do so. Under § 40-6-105, MCA, the District Court did not err in concluding that Gates had failed to rebut the presumption of paternity in favor of Young.

¶21 Donahue also asserts on appeal that Gates is judicially estopped from arguing in the Madison County proceeding that Young is not BNY's father when, in the Silver Bow County proceeding, she asserted that Young was the child's father. Judicial estoppel is a doctrine that seeks to prevent a litigant from asserting an inconsistent, conflicting, or contrary position to one that she has previously asserted in the same or in a previous proceeding. *Simpson v. Simpson*, 2013 MT 22, ¶ 27, 368 Mont. 315, 294 P.3d 1212. "[I]t is designed to prevent litigants and their counsel from playing fast and loose with the

courts and to protect the integrity of the judicial process." *Nelson v. Nelson*, 2002 MT 151, ¶ 20, 310 Mont. 329, 50 P.3d 139. "The doctrine of judicial estoppel binds a party to her judicial declarations, and precludes her from taking a position inconsistent with them in a subsequent action or proceeding." *Nelson*, ¶ 22.

¶22    The elements of judicial estoppel are:

> 1) the estopped party must have knowledge of the facts at the time the original position is taken;
> 2) the party must have succeeded in maintaining the original position;
> 3) the position presently taken must be actually inconsistent with the original position; and
> 4) the original position must have misled the adverse party so that allowing the estopped party to change its position would injuriously affect the adverse party.

*Fiedler v. Fiedler*, 266 Mont. 133, 140, 879 P.2d 675, 679-80.

¶23    Gates asserts that Donahue raises this judicial estoppel argument for the first time on appeal and therefore this Court should not consider it. Gates is incorrect. M. R. Civ. P. 8 generally requires a party responding to a pleading to affirmatively state any affirmative defense, including estoppel. In Donahue's first filing in this case, *i.e.*, his motion to dismiss Gates' complaint, he clearly informed the District Court that Gates claimed in her parenting petition in Silver Bow County that Young was BNY's natural father. We acknowledge Donahue did not use the legal term "judicial estoppel"; however, he presented the legal concept at the proper time and in the proper manner.

¶24    We now examine the facts to determine whether the elements of the doctrine of judicial estoppel are satisfied here. Gates filed a parenting petition in Silver Bow County in which she affirmatively stated that Young was her daughter's father, and she thereby

secured primary custody of her daughter with Young being granted supervised parenting time. She subsequently took an inconsistent position when in the Madison County proceeding, she alleged that Donahue was the father of the child. Finally, it is evident that Donahue was misled by Gates' original position that Young was the father. In fact, Gates did not even contact him until three years after the child was born with the allegation that he was actually the father of the child. There is no question that allowing Gates to change her position with respect to paternity at this juncture would adversely affect Donahue. Given that the four elements of judicial estoppel have been satisfied, we conclude judicial estoppel provides an independent and appropriate basis for the District Court's order dismissing Gates' action against Donahue.

¶25 *Did the District Court err in denying Gates' motion?*

¶26 After the District Court dismissed Gates' complaint, it denied Gates' motion for paternity and sterility tests as moot. We agree.

¶27 As stated above, we will not disturb a district court's correct ruling despite the court's erroneous rationale or application of an incorrect procedural rule. *Kichnet*, ¶ 19. The District Court correctly analyzed the case under the applicable statute. Moreover, the theory of judicial estoppel provides an independent basis for the court's order. Having affirmed the court's ruling, we need not address Gates' motion regarding paternity and sterility tests.

**CONCLUSION**

¶28    Based upon the foregoing, we affirm the Madison County District Court's dismissal of this action with prejudice.


                                        /S/ PATRICIA COTTER


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JIM RICE