DA 07-0174

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 448

IN RE THE MARRIAGE OF

MARK J. STONEMAN,

      Petitioner, Appellant and Cross-Appellee,

  and

RUTH L. DROLLINGER,

      Respondent, Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DR 90-502
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant Cross-Appellee:

      Mark Stoneman, (self-represented); Livingston, Montana

      For Appellee and Cross-Appellant:

      Quentin M. Rhoades; Sullivan, Tabaracci & Rhoades, P.C.,
Missoula, Montana

Submitted on Briefs:  February 6, 2008

Decided:  December 30, 2008

Filed:

_____
                         Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Mark J. Stoneman appeals from the order of the District Court for the Eighteenth Judicial District, Gallatin County, setting the reasonable rental value of property co-owned by the parties in Bozeman, Montana, at $1,200 per month.  Ruth L. Drollinger cross-appeals from the order of the District Court denying her motion that sought forfeiture of Stoneman's interest in the property, as well as from a separate order of the court determining that Washington State had jurisdiction over child support.  We affirm in part and dismiss in part.

¶2     The issues on appeal and cross-appeal are as follows:

¶3     1.  Did the District Court clearly err or abuse its discretion in setting the rental value of the property at $1,200 per month?

¶4     2.  Did the District Court err in denying Drollinger's motion seeking forfeiture of Stoneman's interest in the property?

¶5     3.  Did the District Court err in declining to assume jurisdiction over child support issues on the ground that Washington was the appropriate forum?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6     Stoneman and Drollinger were married on October 1, 1988, in Livingston, Montana.  On August 1, 1990, Stoneman filed a petition for dissolution of marriage. After a series of reconciliations and separations, the court issued a decree dissolving the marriage on October 23, 1998.  The background facts concerning the parties' marriage and dissolution were previously recounted in two previous appeals to this court—

*Stoneman v. Drollinger*, 2000 MT 274, 302 Mont. 107, 14 P.3d 12 ("*Stoneman I*") and *Stoneman v. Drollinger*, 2003 MT 25, 314 Mont. 139, 64 P.3d 997 ("*Stoneman II*").

¶7    In the decree of dissolution, the court awarded custody of the children to Drollinger, divided the marital estate between the parties, and ordered that the residential property on Quinn Creek Road (hereinafter "Quinn Creek Road property") outside of Bozeman, Montana, remain jointly owned until no later than May 13, 2010, when the property would be sold. The decree provided that if Drollinger moved from the Quinn Creek Road property prior to May 13, 2010, the property was to be sold. The decree also ordered the parties to share equally in the expense of the mortgage. In regard to Stoneman's obligation to pay his share of the mortgage, the decree stated "[i]f [Stoneman] is in default of any mortgage payment he shall forfeit all of his interest in the Quinn Creek Road property." The decree also ordered Stoneman to pay child support in the amount of $190 per month each for the parties' four children.

¶8    In *Stoneman I*, Drollinger appealed from the decree of dissolution and we affirmed the District Court's definition and division of the marital property, affirmed its decision not to award maintenance, affirmed its final child support award, and reversed and remanded the District Court's decision allowing Stoneman unsupervised visits with the children, due to Stoneman's history of domestic violence. *Stoneman I*, ¶¶ 34, 40, 46, 50, 61. The facts relevant to the property and child support issues raised herein developed after the entry of the original decree. Because the facts related to the rental and sale of the Quinn Creek Road property are chronologically intertwined with those related to the child support issue, we provide below a separate rendition of the facts for each issue.

3

*A. Facts Pertaining to the Rental and Sale of the Quinn Creek Road Property*

¶9    After Drollinger moved from the Quinn Creek Road property in September 1999, Stoneman filed a Motion for Possession of the Home in which he requested that the court transfer possession of the property to him or allow him to sell the property and divide the proceeds pursuant to the decree. After a hearing on February 18, 2000, the District Court ordered that the property be listed for sale within fifteen days and be sold on or before June 1, 2000. The parties were unable to agree on a realtor or on a number of other points related to the sale and the property was ultimately never sold. Stoneman filed a motion on July 24, 2000, requesting that the court approve a monthly rental agreement for the Quinn Creek Road property with a family of proposed tenants—the Traders. In its August 17, 2000 order, the District Court granted Stoneman's motion and ordered him to pay the rental proceeds to the clerk of the District Court, with those proceeds to be disbursed to cover the monthly mortgage obligation. The court ordered the balance of the proceeds to be paid to Drollinger with half of that balance to be credited to Stoneman's child support obligation.

¶10    On January 9, 2001, Stoneman filed a motion requesting that he be allowed to make mortgage payments directly to CitiMortgage after he received two late payment notices. In response, Drollinger filed a Motion for Renters to Make Payments to Clerk of Court. Drollinger alleged that Stoneman had ceased making rental payments to the clerk of the District Court as he had been ordered. Drollinger provided a letter from CitiMortgage stating that the mortgage was in default. In the District Court's September 10, 2001 order, the court found the system of making payments to the clerk of the District

Court was inefficient and instead ordered Stoneman to make the mortgage payments directly to the lender. The court required Stoneman to file a copy of the payment check with the clerk of the District Court at least one week prior to the time payment was due.

¶11 Citing the language in the decree of dissolution regarding forfeiture of Stoneman's interest in the Quinn Creek Road property if he failed to make the mortgage payments, Drollinger filed a Motion to Enforce Property Provisions of Decree of Dissolution on December 30, 2004. She requested that the District Court transfer Stoneman's interest in the Quinn Creek Road property to her, due to Stoneman's alleged failure to make mortgage payments. In her motion, Drollinger cited Stoneman's testimony during Drollinger's bankruptcy proceeding that he had not been making the mortgage payments since ordered to do so in the September 10, 2001 order. Drollinger also stated that CitiMortgage had initiated foreclosure proceedings on the property in October 2001, but that the balance due on the mortgage had been satisfied by the payment of $106,179.61, representing the $70,743.75 balance on the mortgage plus $35,435.86 in costs and attorney's fees, by Drollinger's father.

¶12 The District Court held a hearing on Drollinger's motion on April 1, 2005, and subsequently issued an order denying her motion. The District Court stated that "[i]t is undisputed that Stoneman has not continued to make mortgage payments on the marital property," but concluded that equity would not be served by ordering forfeiture of Stoneman's interest given the changing circumstances and multitude of intervening orders which had subsequently been entered. The court also ordered the parties to file proposals regarding the issues that remained to be resolved by May 12, 2005.

5

¶13    Drollinger's report of remaining issues identified two issues for resolution by the court: (1) "Whether Stoneman is responsible for payment of any portion of the penalty, interest, accrued late fees, attorney's fees and penalties in connection with the mortgage on the parties' residence to Citibank Mortgage Company, paid by Drollinger," and (2) "Whether Stoneman is responsible for payment of the rent from the parties' residence per the Court's previous Orders to Drollinger, and if so, the amount due to Drollinger." In its May 26, 2006 Order Regarding Remaining Issues, the District Court noted that these were the only two issues brought before the court by the May 12, 2005 deadline, and thus, would be the only two remaining issues to be further considered by the court, despite both parties having filed numerous documents after the deadline.

¶14    Drollinger argued that the rental income owed to her should be based upon Stoneman's testimony at an August 10, 2000 hearing that he was able to rent the Quinn Creek Road property for $1,200 a month. Drollinger claimed that she was entitled to payment from Stoneman for all the months since the August 17, 2000 order at a rate of $1,200 per month less a $270 per month child support credit. In its May 26, 2006 order, the District Court concluded that $1,200 was the reasonable rental value and that Drollinger should be credited for half of this value from August 17, 2000, until April 1, 2005. As there was no evidence as to who controlled the property from April 1, 2005, to the time of the order, the District Court set a hearing to make this determination. The court also ordered that the property be sold immediately in compliance with the decree of dissolution, as Drollinger had moved away, although the court acknowledged that the parties had disregarded previous orders to do so.

6

¶15 After a hearing on January 26, 2007, the court issued an order noting that the parties had stipulated to the appointment of a receiver by the court to supervise the sale of the property. The court also concluded that Drollinger's father should recover $106,179.61 from the sale proceeds in reimbursement of his payment of the outstanding mortgage indebtedness and related expenses. The court again reaffirmed that $1,200 was a reasonable rental value for the property and ordered Stoneman to pay Drollinger half of the total rent from August 17, 2000, until the property was sold, at a rate of $600 per month. The District Court noted that $1,200 represented the reasonable value of Stoneman's control of the property as Drollinger enjoyed no benefit from the use of the property while Stoneman was in control.

*B. Facts Pertaining to Child Support*

¶16 In *Stoneman II*, Drollinger appealed the District Court's denial of her motion requesting the District Court to decline child custody jurisdiction as an inconvenient forum under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *Stoneman II*, ¶ 2. We held that the District Court abused its discretion when it "acknowledged the well documented history of domestic violence presented by this case, yet neglected to consider which forum could best protect Drollinger and the children from further abuse." *Stoneman II*, ¶ 34. We held that Washington was the appropriate forum for further child custody proceedings. *Stoneman II*, ¶¶ 34, 43. Our opinion did not address the issue of child support.

¶17 On August 19, 2005, Drollinger filed a Motion for Modification of Child Support and Medical Support Orders and Show Cause, in which she argued that Montana still had

7

jurisdiction over child support matters under the Uniform Interstate Family Support Act (UIFSA). Drollinger sought child support modification, arguing that the $760 per month set by the decree of dissolution was insufficient given Stoneman's ability to pay. The motion contained numerous allegations about Stoneman's ability to pay and his resistance to doing so. The District Court issued an order on April 3, 2006, in which it first noted that Drollinger had filed the child support motion after the May 12, 2005 deadline established by the court for designation of issues, and stating there was "no apparent good cause" to consider the child support issue. It did, however, declare that because the State of Washington had taken jurisdiction over issues of custody, visitation, and parenting, it would be in a better position to address the matter, and the District Court would not "undertake review separately."

¶18 Several months later, Drollinger filed a motion arguing that Washington had not and could not assume jurisdiction over child support pursuant to the UIFSA. At a January 26, 2007 hearing, the District Court refused to consider Drollinger's motion because the court had previously ordered, on April 3, 2006, that child support would not be considered any further by this jurisdiction.

¶19 In spite of the District Court's clear order and instruction that it would not consider the issue of child support any further, Drollinger filed a Motion to Reconsider Transfer of Jurisdiction on Child Support to Washington State, requesting that the District Court reconsider its earlier decision. However, before the court could take up this latest motion, Stoneman filed a notice of appeal. Drollinger responded by cross-appealing the child support issue.

¶20 Additional facts will be discussed herein.

## STANDARD OF REVIEW

¶21 We review the valuation and allocation of marital property to determine whether the district court's findings are clearly erroneous. *In re Marriage of Baide*, 2004 MT 260, ¶ 7, 323 Mont. 104, ¶ 7, 99 P.3d 178, ¶ 7. Findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehends the effect of the evidence, or this Court's review of the record convinces us that a mistake has been made. *In re Marriage of Dirnberger*, 2007 MT 84, ¶ 19, 337 Mont. 56, ¶ 19, 154 P.3d 1227, ¶ 19. Absent clearly erroneous findings, this Court will affirm a district court's division of property unless we identify an abuse of discretion. *In re Marriage of Dahm*, 2006 MT 230, ¶ 15, 333 Mont. 453, ¶ 15, 143 P.3d 432, ¶ 15. In a dissolution proceeding, the test for an abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in a substantial injustice. *In re Marriage of Jackson*, 2008 MT 25, ¶ 9, 341 Mont. 227, ¶ 9, 177 P.3d 474, ¶ 9.

¶22 The second issue concerns relief from a forfeiture provision in the decree of dissolution and is equitable in nature. In equity cases, we apply the standard of review set forth in § 3-2-204(5), MCA. *Quigley v. Acker*, 1998 MT 72, ¶ 19, 288 Mont. 190, ¶ 19, 955 P.2d 1377, ¶ 19. "Under § 3-2-204(5), MCA, we have a duty to determine all of the issues of the case and to do complete justice." *Quigley*, ¶ 19. This includes the power to fashion equitable results. *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 11, 307 Mont. 45, ¶ 11, 36 P.3d 408, ¶ 11.

9

¶23 A court's determination that it lacks subject matter jurisdiction is a conclusion of law which we review to determine whether the court's interpretation of the law is correct. *Burchett v. MasTec North America, Inc.*, 2004 MT 177, ¶ 9, 322 Mont. 93, ¶ 9, 93 P.3d 1247, ¶ 9.

## DISCUSSION

¶24 ***Issue One. Did the District Court clearly err or abuse its discretion in setting the rental value of the property at $1,200 per month?***

¶25 Stoneman argues that the District Court erred when it set the reasonable rental value of the Quinn Creek Road property at $1,200 per month in the May 26, 2006 order. Stoneman contends that the reference to $1,200 was taken out of context, and that the District Court overlooked other testimony and evidence about the property's reasonable rental value. Stoneman further argues that the District Court disregarded additional testimony presented at the later January 26, 2007 hearing, and simply "piggybacked" its February 7, 2007 determination of rental value on the value previously set in the May 26, 2006 order. Stoneman contends that the reasonable rental value should be set at $600.

¶26 Drollinger responds that the rental rate set by the District Court was based upon reasonable, competent evidence—in particular, Stoneman's testimony that he could have collected $1,200 a month in rent for the property. Drollinger argues that "the task of sorting through contradictory evidence of the value of the marital assets falls appropriately to the trial court," as it is in the best position to observe the witnesses and weigh credibility.

10

¶27 In the May 26, 2006 order, the District Court addressed the issue of reasonable rental value of the property and stated:

> Stoneman testified that the rental agreement with the Traders in 2000 was for $1100 a month. Therefore, it is reasonable to conclude that Stoneman believed that $1100 was a fair rental value at the time. In February 2001 Stoneman rented to a Mr. Andersen in exchange for repairs to the property. Stoneman believed the rental value of the property did not diminish at the time. At the April 1, 2005 Hearing counsel for Drollinger asked, "So, you could have fairly collected $1200 a month for the property; is that right?" Stoneman replied, "Probably at that time." Thus, Stoneman has conceded that although the house needed repairs he still could have collected $1200 a month in rent in April 2005.

The District Court thus set the reasonable rental value at $1,200 per month.

¶28 At the next hearing on January 26, 2007, the District Court heard additional testimony to determine who controlled and benefited from the property from April 1, 2005, and the value of the benefit. In its ensuing order, the court stated:

> The Court previously determined that a reasonable rental value per month including the residence and surrounding pasture ground was $1,200.00 per month. The evidence elicited from Stoneman's own witnesses corroborates that determination. The Court is inclined to take judicial notice that we all have lived in inflationary times since August 2000 which would further erode Stoneman's implicit argument that reasonable rent should be established at a lesser figure. The Court is not required to do so in order to find that a reasonable monthly rental is $1,200 per month. The salient consideration is the reasonable value of Stoneman's control of the marital home and real estate. The issue is not how much rent he has collected. Drollinger has obtained no benefit from use of the property during that period of time. She is entitled to the sum of $600 per month from August 17, 2000 until the property is sold. Stoneman is entitled to remain in sole possession.

¶29 Stoneman makes several arguments about how the District Court erred when making the rental value determination. Stoneman claims that the court failed to realize that the property had been ordered sold and that there should have been no rental value.

Stoneman also points to the low amount of rent charged by Drollinger to several tenants after she vacated the property. Stoneman also claims that the high rental value agreed to by the Traders and Anderson was due to both parties' interest in purchasing the property, and he further notes that the Dennises only paid $600 per month in rent.

¶30 Turning to the record, we first note that, at the August 10, 2000 hearing, Stoneman testified that he had a monthly rental agreement with the Traders in 2000 for $1,100 per month and that he thought that $1,100 was a fair rental for the property. Nearly a year later, at the May 3, 2001 hearing, Stoneman testified that there was a tenant on the property paying $1,200 on a month to month lease. At the April 1, 2005 hearing, Drollinger stated that after she moved from the property in September 1999, she rented the property to a Montana State University student and received $330 in rent per month, but that the student also took care of Drollinger's horses and managed the property. Drollinger noted that she later rented the property to another MSU student under the same terms, and that the rent was only $330 because of the services the renters provided in taking care of the horses and the property.

¶31 Stoneman testified at the April 1, 2005 hearing that he rented the property to three college students for $600 per month from approximately December 2000 to March 2001. Stoneman indicated that he rented the property to Lloyd Anderson from March to May 2001, but that he did not collect rent from Anderson because Anderson made repairs on the house. When asked, "[s]o, you could have fairly collected $1200 a month for the property; is that right?" Stoneman replied, "[p]robably, at that time." After Anderson, Stoneman testified that he lived on the property for approximately two years before

12

renting it to Ralph and Claudia Dennis in July 2003. The Dennises paid $600 per month and, in addition, Stoneman testified that "Ralph said he was going to do some fix-up on the property to supplement that."

¶32   At the January 26, 2007 hearing, the court heard testimony from Diane Fuhrman, a realtor and broker, who testified that houses in the Bozeman area rented for about $350 a bedroom, and probably more with a pasture. The Quinn Creek Road property had a three bedroom house on forty acres. When asked what rental amount would be reasonable for property such as the Quinn Creek Road property, Fuhrman replied, "I would say probably 600 to 900, and then if they had animals, maybe more." Lindsay Patterson, a licensed assistant at a realty company testified that property located in a rural area would rent for $250 to $300 a bedroom. Patterson also said that $1,200 would not be unreasonable for property with land for animals.

¶33   Although the District Court received conflicting testimony regarding the rental valuation of the property, we conclude that the evidence offered at the hearings demonstrates that the District Court did not clearly err in finding that the Quinn Creek Road property had a reasonable rental value of $1,200, as these findings were supported by substantial evidence. A finding regarding valuation of marital property is clearly erroneous "when not supported by substantial evidence, the court misapprehended the effect of the evidence, or review of the record indicates a mistake has been committed." *In re Marriage of Baide*, ¶ 7. Nor do we conclude that the District Court abused its discretion in adopting $1,200 as the reasonable rental value of the property. The District Court noted that the issue was not solely how much rent Stoneman had collected from the

13

tenants, but rather the reasonable value of the property under his control. "As long as the valuation of property in a dissolution is reasonable in light of all the evidence submitted, we will not disturb the finding on appeal." *In re Marriage of Jackson*, ¶ 15.

¶34    We hold that the District Court did not err or abuse its discretion in determining that the Quinn Creek Road property had a reasonable rental value of $1,200 per month.

¶35    ***Issue Two. Did the District Court err in denying Drollinger's motion seeking forfeiture of Stoneman's interest in the property?***

¶36    In her first issue on cross-appeal, Drollinger argues that because the decree of dissolution provides that Stoneman shall forfeit his interest in the Quinn Creek Road property if he misses a mortgage payment, and Stoneman has admitted that he ceased making mortgage payments on the property in June 2001, the forfeiture provision should be enforced. Stoneman replies that the decree also obligated Drollinger to make half the mortgage payment but that she failed to do so. Stoneman claims that the forfeiture provision was "plainly altered" by Drollinger's failure to pay her half of the mortgage payment.

¶37    Paragraph 21 of the decree of dissolution provides: "If [Stoneman] is in default of any mortgage payment he shall forfeit all of his interest in the Quinn Creek Road property." Stoneman admitted at the April 1, 2005 hearing that he stopped making the mortgage payment in June 2001. Drollinger likewise admitted at the May 3, 2001 hearing that she missed payments on the mortgage and also acknowledged in her reply brief that she missed payments, stating "she just didn't have the money."

14

¶38 While Drollinger makes a number of arguments about the interpretation and enforcement of obligations in support of her argument that the decree mandates that Stoneman forfeit his interest in the property, we agree with the District Court that under these circumstances equity favors declining to enforce the forfeiture provision. In response to Drollinger's argument in favor of forfeiture made to the District Court in a December 30, 2004 motion, the court issued an order on April 13, 2005, denying the motion, and stating:

> [I]t is abundantly clear that the parties both have enjoyed pursuing a course of conduct designed to create difficulties for the other or both parties have been addictively unable to do so. In either event, neither party should be able to gain advantage over the other for argued failure to adhere to a court order which is years old and which has been superceded a number of times.

The District Court acknowledged Stoneman's failure to make mortgage payments, but also noted the vast number of orders issued by various judges in the long history of this case and the numerous changes in circumstances since the court issued the decree of dissolution in 1998. The court summed up the issue by stating, "[t]he changing circumstances and intervening orders cause the Court to view the present motion in light of the history of the parties *inter se*. That analysis leads the Court to conclude that equity is not served in the event the order upon which Drollinger seeks relief were to be enforced."[1]

---

[1] Drollinger also raised this issue with the Bankruptcy Court during one of her bankruptcy proceedings. The Bankruptcy Court issued an order stating, "[g]iven the failure by both parties to timely make the payments to CitiMortgage, Inc., the Court finds that it would be inherently unfair to strip Stoneman of his right, title and interest in the property. Such attempt by Drollinger once again demonstrates the lengths Drollinger and Stoneman will go to antagonize

15

¶39   "This Court has long recognized that equity abhors forfeitures." *Quigley*, ¶ 31 (citing *Yellowstone Co. v. Wight*, 115 Mont. 411, 418, 145 P.2d 516, 518 (1943)). "The granting of relief against forfeitures is generally discretionary, the controlling principle being that it will be granted where, and only where, it is equitable under the circumstances." 30A C.J.S. *Equity* § 69 (2007). Thus, even though the decree provides that forfeiture would result from Stoneman's failure to make the mortgage payments, equitable relief from that forfeiture provision is warranted given that Stoneman and Drollinger both missed mortgage payments and engaged in the other documented actions cited by other courts addressing this case. The nature of this case has changed dramatically in the time since the court issued the decree of dissolution, and it would not be fair or appropriate to bind the parties to a provision that no longer accurately reflects the status of the case.

¶40   We hold that the District Court did not err in refusing to enforce the forfeiture provision of the decree of dissolution.

¶41   ***Issue Three. Did the District Court err in declining to assume jurisdiction over child support issues on the ground that Washington was the appropriate forum?***

¶42   In her second cross-appeal issue, Drollinger contends that the District Court erred when it determined that jurisdiction over child support should be "transferred" to Washington in conjunction with the transfer of custody and parenting issues to that state. Drollinger argues that this determination was incorrectly based on a previous order of the District Court transferring jurisdiction over child custody to Washington following our

one another. Consequently, the Court concludes that Drollinger and Stoneman remain in joint ownership of the Quinn Creek Road property at the present time."

16

decision in *Stoneman II*. Drollinger contends that under the UIFSA, Montana has continuing and exclusive jurisdiction over child support, "as long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued," or "until all of the parties who are individuals have filed written consent with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction," as provided in § 40-5-149(1)(a) through (b), MCA. Drollinger notes that the obligor, Stoneman, resides in Montana. Drollinger also offers that the Washington trial court and the Washington Department of Social and Health Services have declined to assume jurisdiction over Drollinger's child support claims.

¶43 We conclude that we cannot address Drollinger's substantive claims regarding child support because her appeal of this issue is not timely. M. R. App. P. 4(5) governs the time for filing notice of appeal or cross-appeal, and provides that "[i]n civil cases . . . the notice of appeal shall be filed with the clerk of the supreme court within 30 days from the date of entry of the judgment or order from which the appeal is taken." Drollinger filed her Motion for Modification of Child Support and Medical Support Orders and Show Cause on August 19, 2005. In response, the District Court issued its April 3, 2006 Interim Order on Remaining Issues and made clear that it would not review child support issues, stating:

> Moreover, there is no apparent good cause to consider any other issue, including child support. Even if circumstances have changed requiring child support to be revisited, the State of Washington has taken jurisdiction over issues of custody, visitation and parenting. The transfer of jurisdiction to the State of Washington was predicated on the fact that the children live

17

in Washington. That jurisdiction will be better advised on costs, expenses and circumstances overall. Where Washington has assumed jurisdiction over those issues, this Court should not undertake review separately.

¶44 It is from this order that Drollinger appeals, explaining in her brief that "[t]his appeal seeks review of the Montana district court's refusal to take jurisdiction." However, her notice of cross-appeal, filed March 9, 2007, is over eleven months after the District Court's order, well past the filing deadline established under M. R. App. P. 4(5). In her notice of cross-appeal, Drollinger claims that she is appealing from both the April 3, 2006 order as well as the court's later January 26, 2007 "oral order" regarding child support. However, a review of the January 26, 2007 hearing transcript demonstrates that the court simply reiterated that it would not consider the issue further because its order of April 3, 2006, had finally settled the matter. In response to Drollinger's renewed motion, the court stated "[t]hat's moot. It needs no Order, it needs no action. This Court -- this Judge previously ordered that child support is not going to be considered here in this venue, in this case any longer, or in this jurisdiction."

¶45 The April 3, 2006 order was the District Court's final order on child support and Drollinger failed to timely appeal the court's ruling. Further, Drollinger's later renewed motion seeking further review of the issue did not re-start the time for appealing the order. Accordingly, we must dismiss Drollinger's appeal of this child support issue.

**CONCLUSION**

¶46 The District Court did not err when it determined that the Quinn Creek Road property had a reasonable rental value of $1,200. This determination was supported by substantial credible evidence and we will not disturb the District Court's finding as

18

Stoneman has failed to establish any error or abuse of discretion. We also agree with the District Court that equity would not be served by ordering forfeiture of Stoneman's interest in the property due to his failure to make timely mortgage payments, in light of the evolving nature of the case and the actions of the parties. Finally, Drollinger has failed to timely appeal the District Court's final order on child support and we dismiss her claim.

¶47   Affirmed in part and dismissed in part.


                                        /S/ JIM RICE


We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER