

DA 11-0781

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 22

LARISSA L. SIMPSON,

        Petitioner, Appellee, and
        Cross Appellant,

   v.

DENNIS SIMPSON,

        Respondent, Appellant, and
        Cross Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                     In and For the County of Yellowstone, Cause No. DR 06-1018
                     Honorable Ingrid Gustafson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Christopher J. Gillette, Attorney at Law, Bozeman, Montana

        For Appellee:

        John M. Kauffman, Kasting, Kauffman & Mersen, P.C.,
        Bozeman, Montana

Submitted on Briefs:   October 30, 2012
Decided:   January 31, 2013

Filed:

_____
                   Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Dennis Simpson ("Dennis") appeals the denial of his motion to modify child support by the Thirteenth Judicial District Court, Yellowstone County. Larissa Simpson ("Larissa") cross-appeals the District Court's denial of her motion to invalidate the parties' stipulation amending the final decree. We affirm both issues.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2     Dennis and Larissa were married on December 17, 1988, in Twin Bridges, Montana. Larissa filed a petition for dissolution of the marriage on October 13, 2006, citing serious marital discord. At the time of the dissolution, Dennis and Larissa had three minor children. Dennis's primary source of income was from Simpson's Hot Springs, Inc., d/b/a Bozeman Hot Springs ("the Hot Springs"), of which he is an owner. The Hot Springs afforded Dennis an income of roughly $1,500,000.00 a year. Larissa worked as a homemaker.

¶3     As part of the dissolution, Dennis and Larissa entered into a Property Settlement Agreement ("the Agreement") and a Stipulated Final Parenting Plan ("the Plan") in October of 2006. The Agreement distributed Dennis's and Larissa's property and allocated their debts and liabilities. Under the Agreement, Dennis retained the marital residence, the retirement and investment accounts in his name, vehicles titled in his name, accounts held in his name, and all real and personal property in his possession. He also assumed sole responsibility for all bills that existed at the time of the dissolution. Larissa was to receive several forms of payment from Dennis. These payments consisted of a $10,000.00 per month payment "for life" and a $500,000.00 payment to be rendered in

2

total by January 7, 2009.  Dennis's monthly payment obligation was set to begin "in the month following the parties' youngest child's graduation from high school or one month following his 19th birthday."  Dennis was also required to make the payments on Larissa's vehicle and give Larissa a lifetime membership to a fitness center.  The Agreement finally provided that it "shall not be modified in any future legal proceeding under the authority of § 40-4-201(6), MCA."

¶4     The Plan directed Dennis to pay Larissa $10,000.00 per month in child support until "terminated by emancipation of each child or each child's graduation from high school," but in no event later than each child's 19th birthday.  Thus, the combined operation of the Plan and the Agreement entitled Larissa to a $10,000.00 per month payment from Dennis for the rest of her life, first in child support, and later, after the youngest child reached 19 years of age, in the form of a property settlement.  The District Court found that the Agreement was not unconscionable and found that the Plan was in the best interests of the children, adopting and incorporating both into the court's Final Decree of Dissolution of Marriage, filed November 3, 2006.

¶5     Dennis eventually began to fall behind in paying the $10,000.00 per month in child support.  In response, Larissa filed a motion for contempt on August 29, 2008, alleging Dennis owed $77,412.05 in child support through July 2008, and $47,510.41 in an outstanding tax bill he accepted responsibility for under the Agreement.  Shortly thereafter, a fire at the Hot Springs resulted in significant damage, and Dennis claimed this fire impaired both his ability to pay his obligations and his ability to appear for a show cause hearing.  Dennis accordingly sought a series of continuations and the parties

3

finally agreed to participate in mediation regarding Dennis's alleged arrearage in May of 2009. In light of the pending mediation, the District Court continued the show cause hearing on Larissa's motion for contempt, ordering that it could be re-set upon the request of either party following the completion of mediation.

¶6 Dennis has claimed that prior to the mediation both he and Larissa disputed the amount of arrearage and whether child support should continue. At the mediation, Dennis and Larissa stipulated to several modifications of Dennis's original payment obligations and agreed upon the arrearage. Specifically, Dennis and Larissa agreed to amend the court's November 3, 2008 final decree to: (1) indefinitely extend the January 7, 2009 deadline for the $500,000.00 lump-sum payment, agreeing that the obligation would accrue simple interest at the rate of five percent per year until paid in full; (2) agree that Dennis owed $55,000.00 in child support through June 2009, and that this arrearage would accrue five percent annual interest beginning January 7, 2009, until paid in full; (3) agree that Dennis would pay $6,000.00 per month in "child support" beginning July 1, 2009, to be paid by automatic deposit; (4) agree that the remaining $4,000.00 in child support owing each month would accrue five percent annual interest until paid in full; (5) agree that until the obligations are paid in full, any net proceeds greater than $500.00 from the sale of Dennis's real or personal property would be paid towards his obligations; and (6) agree that Dennis had roughly six months to either satisfy his outstanding tax obligation or remove Larissa's liability. These agreements were memorialized in a document entitled "Stipulation and Order Amending Final Decree," ("the Stipulation") and it was signed by Larissa, but not Dennis. Notably, the Stipulation

4

did not decrease Dennis's total monthly child support obligation in light of Larissa's diminished parental responsibilities. Instead, the Stipulation provided for a delayed child support payment schedule and set the interest rate to be applied to any arrearage.

¶7     After the mediation, Dennis and Larissa engaged in protracted wrangling over Larissa's discovery requests. In response to Dennis's recalcitrance and failure to pay the mediated child support obligation, Larissa requested that the court set a hearing on her motion for contempt, which the court scheduled for November 17, 2010. Following the hearing, the Court ordered Dennis to begin paying child support per the Stipulation on December 1, 2010, and to pay the outstanding tax obligation.

¶8     Dennis filed a Motion to Modify Child Support ("the Motion") on November 17, 2010. The Motion alleged that the $10,000.00 per month in child support was unconscionable in light of changed circumstances. Specifically, Dennis alleged that Larissa was no longer supporting any children, as two of his three children had reached the age of majority and the youngest was residing with him, and argued that Larissa's income had changed. Larissa opposed the Motion, arguing that circumstances had not changed and that the child support was part of a "greater agreement" dividing the marital estate and could therefore not be modified without reforming "the entire agreement."

¶9     At a March 16, 2011 show cause hearing concerning Larissa's motion to hold Dennis in contempt for failing to abide by the court's November 17, 2010 order, Larissa challenged the validity of the Stipulation. There, Larissa somewhat incongruously claimed that the Stipulation was invalid while also asking the court to hold Dennis in contempt for failing to follow its terms regarding the payment of child support. In a

5

subsequent motion, Larissa claimed the Stipulation lacked either sufficient consideration or mutual consent and argued the Plan and Settlement were not modifiable.

¶10   The District Court addressed Dennis's motion to modify child support and Larissa's motion to invalidate the Stipulation in its September 23, 2011 order.  The court denied Dennis's motion to modify child support payments by concluding that the parties intended to provide Larissa a $10,000 per month income regardless of her parental responsibilities.   In support, the court cited Dennis's statement that characterizing payments as child support was a "misnomer" in light of Larissa's lack of parenting responsibilities.   The court reasoned its conclusion was bolstered by the fact that the Stipulation did not reduce child support payments even though "Larissa [had] no children residing with her."   Because Dennis's "child support" obligation seemed to exist independent of Larissa's actual child support needs, the court concluded that it was "the obvious intention" of the parties to provide Larissa $10,000 per month for life, regardless of labels.

¶11   The court similarly denied Larissa's motion to invalidate the stipulation, finding that because the parties had "significant disputes" concerning the amounts Dennis owed Larissa, "there clearly was consideration for the stipulation."  More importantly, the court found that Larissa was estopped from asserting the Stipulation was invalid in light of her prior representations that the Stipulation embodied the parties' mediated agreement and because of her various efforts to enforce its terms.

¶12   Dennis and Larissa's appeals followed the District Court's September 23, 2011 order dispatching their motions.

6

## STATEMENT OF THE ISSUES

¶13     1.  Whether the District Court erred by denying Dennis's Motion to Modify Child Support.

¶14     2.  Whether the District Court erred by denying Larissa's motion to invalidate the parties' stipulation amending Dennis's child support and lump sum payments.

## STANDARD OF REVIEW

¶15     We review a district court's overall decision on modification of child support for an abuse of discretion. *In re Marriage of Wilson*, 2009 MT 203, ¶ 12, 351 Mont. 204, 210 P.3d 170.  A trial court abuses its discretion when it acts arbitrarily without conscientious judgment or so exceeds the bounds of reason as to work a substantial injustice. *In re Kessler,* 2011 MT 54, ¶ 15, 359 Mont. 419, 251 P.3d 147.  Further, the court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed for correctness. *In re Marriage of Damschen*, 2011 MT 297, ¶ 22, 363 Mont. 19, 265 P.3d 1245.  A divorce court is also a court of equity, *Libra v. Libra*, 157 Mont. 252, 256, 484 P.2d 748 (1971), and when we consider matters of an equitable nature, we review findings of fact and conclusions of law with an eye towards doing "complete justice." *In re Marriage of Stoneman*, 2008 MT 448, ¶ 22, 348 Mont. 17, 199 P.3d 232; *see* § 3-2-204(5), MCA.

## DISCUSSION

¶16     *1. Whether the District Court erred by denying Dennis's Motion to Modify Child Support.*

¶17 The District Court denied Dennis's motion to modify the child support payments by concluding that the parties intended that Dennis would pay Larissa $10,000.00 per month for life, regardless of whether it was labeled as child support or a property settlement. As noted, this decision was based on the court's interpretation of the joint operation of the Plan, Agreement, and Stipulation, and Dennis's and Larissa's representations to the court.

¶18 On appeal, Dennis argues the District Court erred by using extrinsic evidence to rewrite the unambiguous language of the Plan. Because the Plan termed Dennis's payment obligations as "child support," Dennis denies that the parties intended the Agreement and the Plan to jointly provide Larissa with $10,000.00 per month regardless of her parental responsibilities. Instead, Dennis argues the plain language of the Plan established that the $10,000.00 per month payments owed to Larissa were child support, and were therefore modifiable pursuant to § 40-4-208, MCA. As a consequence, Dennis argues the District Court erred by denying his motion to modify child support in light of clearly changed circumstances.

¶19 Larissa counters that each party intended that Larissa was to receive $10,000.00 per month for life, regardless of labels. Larissa argues this intent is evident from Dennis's characterization of the Plan's use of "child support" as a "misnomer" and from the general nature of the division of the marital estate. Larissa also argues that because of a court's equitable powers in dissolution proceedings, *see Karr v. Karr*, 192 Mont. 388, 409-10, 628 P.2d 267 (1981), courts are not bound by the labels affixed to obligations.

¶20   As originally executed, the Plan provided that Dennis owed Larissa $10,000.00 per month in "child support" until the youngest of their three children reached the age of majority. However, the court considered the context of the agreements, circumstances of the parties, and Dennis's representations to the court to deny Dennis's motion to modify the child support. As the court noted, under the Stipulation the parties agreed to maintain what amounted to the same $10,000.00 per month child support obligation *after* two of the children had aged out of child support considerations and *after* the youngest child was residing solely with Dennis. The court also considered Dennis's prior statement that Larissa's characterization of the child support payments was a "misnomer" in light of her diminished parental responsibilities. Dennis contests the District Court's consideration of these surrounding circumstances and claims any reference to external evidence was inappropriate.

¶21   It is generally true that "evidence of the circumstances under which an instrument was made may not be considered where the language of the instrument is clear and certain in its terms." *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 47, 338 Mont. 41, 164 P.3d 851. Yet the court was right to not ignore the context of the child support obligation. Indeed, it is well-established that "the operative meaning [of a contract] is found in the transaction and its context rather than in the law or in the usages of people other than the parties." *Restatement (Second) of Contracts*, § 212 cmt. a (1981). Here, as the District Court noted, "[i]t would make no sense for Dennis to agree as he did to provide child support to Larissa in any amount [after the children had either aged out of consideration or moved in with Dennis], but for

9

the obvious intention of the parties to provide monthly income to Larissa of $10,000 per month." We agree, and as we outline below, the court's consideration of this context was not an abuse of discretion.

¶22 The District Court's holding comports with our longstanding recognition that the general rule prohibiting the application of extrinsic evidence to an unambiguous writing does not preclude *all* reference to the circumstances of the agreement. In *Hopper v. Hopper*, 183 Mont. 543, 550, 601 P.2d 29 (1979), we concluded that "this Court will look past mere labels to the substance of the parties' agreement" to determine the intended nature of particular obligations. We have likewise recognized that " 'meaning can almost never be plain except *in context*,' " *Mary J. Baker Revocable Trust*, ¶ 48, (quoting *Restatement (Second) of Contracts*, § 212 cmt. b (1981) (emphasis added)), and determining the object of a writing necessarily requires consideration of the objective circumstances of the agreement. We have previously adopted the Ohio Supreme Court's articulation of the benefits of this approach:

> These parties [to the writing in question] may be fairly presumed to have understood the matter about which they were contracting. But the same thing cannot be said of every court and jury that may be called on to interpret their contract. To enable the court and jury to be as wise as the parties, and so to arrive at and give application to the words they have used, and thus carry out their intentions, the law permits them to hear a full description, from evidence, of the subject matter of the contract, and of all the circumstances that surrounded the parties at the time it was made; and to learn what were the motives and inducements that led to the contract, and the object to be attained by it; . . . . The object or tendency of this evidence is not to contradict or vary the terms of the instrument, but to enable the court to come to the language employed, with an enlightened understanding of the subject matter in reference to which it has been used.

*Mary J. Baker Revocable Trust*, ¶ 49, (quoting *Hildebrand v. Fogle*, 20 Ohio 147, 157 (1851)). In *Bridges & Co. v. Bank of Fergus County*, we similarly recognized that:

> The face of an instrument is not always conclusive of its purpose. The [parol evidence] rule regards the circumstances of the parties and executes their real intention, and prevents either of the parties to the instrument from committing a fraud on the other by claiming it to be what it in fact is not. In other words, the real transaction may be proved.

77 Mont. 524, 538, 251 P. 1057 (1926); *see also* § 1-4-102, MCA ("For the proper construction of an instrument, the circumstances under which it was made . . . may also be shown so that the judge is placed in the position of those whose language the judge is to interpret.").

¶23 More specifically regarding the circumstances of this case, we have recognized that this Court is not bound by labels given by the parties to provisions in their separation agreements. *King v. King*, 276 Mont. 500, 503, 917 P.2d 434, 436 (1996). On several occasions, we have refused to modify a maintenance award when it has been determined to be "an integral part of the property distribution and that was the intent of the parties at the time of the agreement[.]" *King*, 276 Mont. at 503-04, 917 P.2d at 437; *In re Marriage of Robertson*, 237 Mont. 406, 773 P.2d 1213 (1989); *Washington v. Washington*, 162 Mont. 349, 354, 512 P.2d 1300, 1302-03 (1973). It follows that the District Court properly considered the objective circumstances of the parties and context of the agreements to determine the peculiar meaning of "child support" in this case. Here, when the Plan and Agreement were executed, the parties had a substantial marital estate, with Dennis's annual income estimated at over $1.5 million. The youngest child was nine years old. Thus, aside from the lump sum payment of $500,000.00, and without

consideration of the child support payments, the Agreement provided Larissa with no distribution of property and no other monetary payment from Dennis for ten years. Further, under the Stipulation, Dennis agreed to continue to pay $10,000.00 per month in child support *despite the fact that no children resided with Larissa*. Even more tellingly, Dennis sought and obtained an order blocking Larissa from enforcing the child support payment through Montana's Child Support Enforcement Division by arguing that because Larissa had never been primary custodian of any of the children, "the characterization of her payments as 'child support' is a misnomer."

¶24 As noted, we have previously recognized exceptions to the general rule that courts may not consider evidence of the circumstances of a writing when the language is clear. *Mary J. Baker Revocable Trust*, ¶¶ 47-53; *see In re Estate of Stukey*, 2004 MT 279, ¶ 73, 323 Mont. 241, 100 P.3d 114 (" 'The judge, however, may consider circumstances surrounding the execution [of a writing], including the situation of the subject of the instrument and of the parties, to place himself in a position to interpret the language' ") (quoting *Martin v. Laurel Cable TV*, 215 Mont. 229, 233, 696 P.2d 454, 457 (1985)); *Newell v. Nicholson*, 17 Mont. 389, 393, 43 P. 180 (1896) (affirming admission of testimony on technical or peculiar meaning of words in an agreement "in the particular instance before the court."). When we look at the context of the agreements filed by the parties in support of the final decree of dissolution, it is clear that Dennis's obligation to pay the $10,000.00 per month in child support "was undertaken by [him] in exchange for [Larissa's] forbearance in regard to the property of the marital estate." *Robertson*, 237 Mont. at 410, 773 P.2d at 1216. Dennis's child support obligation therefore cannot be

severed from the Settlement without destroying the parties' agreements. *Robertson*, 237 Mont. at 410, 773 P.2d at 1216. This conclusion is bolstered by the context of the Stipulation and Dennis's statement to the District Court that the characterization of his monthly obligation as "child support" was a "misnomer." It follows that the District Court did not exceed the bounds of reason by determining that the parties may have placed some "otherwise peculiar signification" on the term "child support." *Laurel Cable TV*, 215 Mont. at 233, 696 P.2d at 457. We accordingly conclude that the District Court did not err by concluding that the parties intended Dennis's "child support" obligation to be a form of property settlement not subject to modification pursuant to § 40-4-208, MCA.

¶25    2. *Whether the District Court erred by denying Larissa's motion to invalidate the parties' stipulation amending Dennis's child support and lump sum payments.*

¶26    The District Court denied Larissa's motion to invalidate the Stipulation, concluding that Larissa was estopped from denying an agreement she had previously acknowledged and finding that the agreement contained sufficient consideration because it settled a dispute concerning the amount of arrearage. On appeal, Larissa argues that because Dennis did not detrimentally rely on "any representation or act" by Larissa regarding the Stipulation, the court erred by finding she was estopped from challenging the Stipulation's validity. Larissa further asserts the court erred in finding the Stipulation contained consideration by arguing Dennis provided insufficient past consideration. Because we agree that Larissa is estopped from denying the Stipulation, we need not address her latter argument.

13

¶27 First, "[j]udicial estoppel is a doctrine created by judges that . . . seeks to prevent a litigant from asserting a position [that is] inconsistent, conflicts with, or is contrary to one that she has previously asserted in the same or in a previous proceeding . . . ." *Nelson v. Nelson*, 2002 MT 151, ¶ 20, 310 Mont. 239, 50 P.3d 139. We have recognized that the " '[j]udicial estoppel doctrine is equitable and is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.' " *Nelson*, ¶ 20 (quoting 28 Am. Jur. 2d. Estoppel and Waiver § 33 (2012)). Thus, although judicial estoppel is a form of estoppel, it

> partakes rather of positive rules of procedure based on manifest justice and, to a greater or lesser degree, of considerations of orderliness, regularity, and the expedition of litigation, and *those elements such as reliance and injury, or prejudice to the individual, which are generally essential to the operation of equitable estoppel, may not enter into judicial estoppel*, at least not to the same extent."

*Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 15, 307 Mont. 45, 36 P.3d 408 (quoting *Rowland v. Klies*, 223 Mont. 360, 367, 726 P.2d 310, 315 (1986) (emphasis added)). The primary goal of judicial estoppel is to preserve the integrity of the judicial process, and reliance by the opposite party, while an element of promissory or equitable estoppel,[1] is not required.

¶28 Here, Larissa frequently acknowledged the Stipulation in filings before the court and repeatedly sought to enforce its terms. She specifically referenced the validity of the

---

[1] Equitable estoppel provides that a person may not deny the existence of a statement of fact if they *intentionally led another person* to believe it was true *and to rely* on that belief. 28 Am. Jur. 2d Estoppel and Waiver § 39 (2012). Promissory estoppel similarly provides that a promisor is bound by a promise that "the promisor reasonably expects to induce action or forbearance *on the part of the promisee* . . . and that does induce action or forbearance . . . ." 29 Am. Jur. 2d Estoppel and Waiver § 51 (2012) (emphasis added).

14

Stipulation while resisting Dennis's motion for a protective order and relied upon the Stipulation when opposing Dennis's motion to modify child support. In filings to the court, Larissa acknowledged "[t]he parties stipulated at mediation to the temporary modification of certain conditions of the original settlement," outlined those amendments, sought to enforce the stipulated arrearage, and attached a copy of the Stipulation. She agreed that "the agreements made at mediation did not substantially alter the parties' obligations," and sought to use Dennis's "bad faith" failure to abide by the terms of the Stipulation in support of her motion for contempt. Larissa further acknowledged the validity of the Stipulation in her response to Dennis's motion to modify child support, arguing therein that Dennis "[had] not become current with his child support arrearages, *which the parties set forth in their mediated agreement as $55,000 as of January, 2009, and accruing interest at 5% thereafter*." (Emphasis added.) Moreover, Larissa prevailed in her attempts to enforce the Stipulation, as the court's November 17, 2010 order enforced the terms of the Stipulation and required Dennis to arrange for the automatic transfer of $6,000.00 in child support each month. Larissa further sought to enforce this order, and through it the Stipulation, in a January 21, 2011 motion, while Larissa's counsel acknowledged "[w]e believe that we entered into that [Stipulation] agreement," at a March 16, 2011 show cause hearing.

¶29 In light of these representations, Larissa may not now deny the validity of the Stipulation. Regardless of whether Dennis relied on the representations, allowing a litigant to alternatively acknowledge or deny the validity of an agreement according to the shifting demands of their self-interest would undermine the integrity of judicial

15

proceedings. Judicial estoppel applies where, as here, "chameleonic" litigants advance opposite theories in an attempt to manipulate the court. *Nelson*, ¶ 20. We therefore find that the District Court correctly concluded Larissa was judicially estopped from denying the Stipulation. Larissa succeeded in persuading the court to enforce the terms of the Stipulation on several occasions and may not thereafter take an inconsistent position.

¶30 Because we find that Larissa was estopped from denying the validity of the Stipulation, we need not address Larissa's arguments concerning whether the Stipulation was supported by sufficient consideration. Larissa repeatedly asked the District Court to either enforce the Stipulation or enforce orders of the court reflecting the terms of the Stipulation. Larissa is therefore estopped from proffering further arguments attacking the validity of the Stipulation, whether relating to the sufficiency of consideration or otherwise. *See Englund v. Englund*, 169 Mont. 418, 420-21, 547 P.2d 841 (1976).

## CONCLUSION

¶31 We accordingly affirm the decisions of the District Court denying Dennis's motion to modify child support and Larissa's motion to invalidate the Stipulation.

¶32 Affirmed.

/S/ Michael E Wheat

We Concur:

/S/ Mike McGrath
/S/ Brian Morris
/S/ Beth Baker

16

Justice Patricia O. Cotter concurs and dissents.

¶33 I dissent from the Court's resolution of Issue One and concur with the Court's resolution of Issue Two.

¶34 The Court goes to tortuous lengths to rationalize its conclusion that the parties did not truly intend for Dennis's "child support" obligations to actually *be* "child support" obligations. In so doing, the Court ignores both the provisions of the contracts negotiated between the parties and settled law.

¶35 The Plan, negotiated in 2006, unequivocally provided for Dennis to pay Larissa monthly child support payments in the sum of $10,000, as calculated in accordance with § 40-4-204, MCA, and the Montana Child Support Guidelines. The obligation was to continue until terminated by emancipation of each child, but in no event later than each child's nineteenth birthday. The parties prepared Montana Child Support Guidelines Worksheets A and B, and attached these worksheets to the Plan that was submitted to the District Court for approval. The worksheets reflected the incomes of both parties and the parenting arrangements in effect at the time. According to the Plan, the eldest and youngest child would reside primarily with Dennis and the middle child would reside primarily with Larissa. The worksheets reflected that each child would be residing essentially equally with both parents. Subsequently, on November 3, 2006, the District Court entered a Decree of Dissolution, obligating Dennis to pay $10,000 per month for child support, for the care of the children.

¶36 In sum, the Plan, the Stipulation, and the Decree all provided for the payment of child support until the children were emancipated. Nowhere in the documents did the

17

parties or the court say or even infer that the child support obligation was actually intended as a form of property settlement. In order for the Court to reach this conclusion, it disregards the plain language of both the parties' agreements and the District Court's Decree of Dissolution, and rewrites all three documents.

¶37 In defense of its decision, the Court attaches significance to the fact that by the time the parties entered the 2009 Stipulation, none of the children resided with Larissa. Opinion, ¶ 23. However, as indicated above, only one of the children resided primarily with Larissa when the parties agreed to the child support calculation in the 2006 Plan. Further, Larissa freely conceded in her testimony that the parties intended to comply with the Child Support Guidelines, and that they intended an open residential schedule with the children. These circumstances underscore the intent of the parties to have Dennis support the children regardless of where they lived. The Court ignores these factors in its haste to declare contractual child support obligations—which are incorporated into a District Court Decree—to be something else altogether.

¶38 In *In re Marriage of Craib*, 266 Mont. 483, 880 P.2d 1379 (1994), the parties were before the Court on cross-motions seeking to modify provisions of a decree of dissolution. Kenneth sought to introduce certain information regarding income tax responsibility, arguing to the Court that since the parties' agreement incorporated into the decree was silent on the point of tax payments, the Court must now determine who is responsible for the payment. *Craib,* 266 Mont. at 498-99, 880 P.2d at 1389. The district court denied admission of any evidence pertaining to the circumstances at the time of the

18

dissolution, concluding that the parties' agreement "speaks for itself." *Craib,* 266 Mont. at 499, 880 P.2d at 1389. We affirmed this ruling, stating:

> We conclude the District Court properly refused to admit evidence in this proceeding about the circumstances at the time of the dissolution. We further conclude that the court's statement that the agreement speaks for itself is a determination that the evidence sought to be admitted was not relevant to this proceeding.

*Craib,* 266 Mont. at 499, 880 P.2d at 1389.

¶39 This Court has a long history of interpreting contracts to allow the document to speak for itself:

> The true rule is, *to give effect to the intention of the parties if the words they employ will admit of it*. But if the words used, by their clearness and certainty, absolutely forbid the aid of extrinsic evidence in their interpretation, it would be changing the *certain written contract* of the parties to let in outside parol proof.
>
> Parties must contract for themselves, courts cannot make contracts for them, and the rules of interpretation are utterly unavailing to aid a contract or agreement that is specific and certain in its terms, and clearly speaks what the parties intended it should. . . . The language must control and not the circumstances. The written words must stand and no parol proof can destroy them.

*Taylor v. Holter*, 1 Mont. 688, 698-99 (1872) (emphasis in original). The majority's decision represents a striking departure from these long-standing rules. The words "child support" are clear and unequivocal in their meaning, yet the Court ignores the language of the parties' agreements and the District Court's Decree, and substitutes its own contradictory interpretation.

¶40 An agreement speaks for itself. Absent a mistake or imperfection of the writing that is put in issue by the pleadings, or a contention that the agreement itself is invalid—

19

neither of which is alleged here—there can be no evidence of the terms of the agreement other than the contents of the writing. Section 28-2-905(1), MCA. When the language of a contract is clear, "there is nothing for the courts to interpret or construe and the court must determine the intent of the parties from the wording of the contract alone." *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 55, 338 Mont. 41, 164 P.3d 851 (quoting *Doble v. Bernhard*, 1998 MT 124, ¶ 19, 289 Mont. 80, 959 P.2d 488); *see also* § 28-3-401, MCA ("The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity."). Therefore, "the duty of the court is to apply the language as written." *Doble*, ¶ 19. I disagree strongly with the Court's determination to jettison these statutory mandates in the interests of reaching a desired result.

¶41 On November 17, 2010, Dennis filed a Motion to Modify Child Support pursuant to § 40-4-208, MCA. He argued that the financial impact of the fire at the hot springs, when combined with the economic downturn, rendered him unable to pay child support as required under the Decree and Stipulation. He also argued that two of the children were emancipated. Instead of addressing the merits of these claimed changes in circumstance under § 40-4-208, MCA, the District Court determined that the parties intended the monthly payments to be for the benefit of Larissa and not the children. We perpetuate this clear error.

¶42 I would reverse and remand for consideration of Dennis's Motion to Modify Child Support under § 40-4-208, MCA. On remand, the court would consider the totality of the previous and present circumstances pursuant to §§ 40-4-204(2) and -208(2)(b), MCA, in

20

determining whether a substantial change in circumstances has actually occurred. Having done so, the court could find justification for Dennis's motion, or reject it as unsupported by the facts. The point is that a child support order should be reviewed for modification under the child support statutes, keeping in mind the best interests of the children. It is important to perpetuate the distinction between child support on the one hand, and property settlement and maintenance on the other. I fear that our decision today gives tacit approval to a blurring of these wholly separate obligations.

¶43     I therefore concur and dissent.


                                                    /S/ Patricia O. Cotter